**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JENNIFER SHEEHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-364 S** |
| | ) | |
| **THE NORTH AMERICAN MARKETING CORPORATION and DELAIR GROUP, L.L.C.** | ) | |
| | ) | |
| **Defendants** | ) | |

**DEFENDANTS DELAIR GROUP L.L.C. AND NORTH AMERICAN MARKETING CORPORATION'S LOCAL RULE CV 56 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Delair Group L.L.C. ("Delair") and the North American Marketing Corporation ("NAMCO") submit the following Statement of Undisputed Facts pursuant to Local Rule Cv 56 and in support of their Motion For Summary Judgment:

1. Delair is a New Jersey limited liability company with a principal place of business at 8600 River Road, Delair, New Jersey, 08110. [*See* Deposition Transcript of Fred Schall, Delair's 30(b)(6) witness, pertinent pages of which are attached hereto at **Exhibit A**, at p. 7 ("Schall Dep.")].

2. NAMCO is a Connecticut corporation with a principal place of business at 100 Sanrico Drive, Manchester, Connecticut. [*See* Deposition Transcript of Stephen Radocchia, NAMCO's 30(b)(6) witness, pertinent pages of which are attached hereto at **Exhibit B**, at p. 4 ("Radocchia Dep.")].

3. On August 8, 2002, at about 1:30 PM, Plaintiff Sheehan ("Plaintiff" or "Ms.

Sheehan") picked up Marvin Nadiger ("Mr. Nadiger") at work in Warwick, R.I. and then drove him in her car to the Islander Restaurant in Warwick. [*See* Deposition Transcript of Jennifer Sheehan, pertinent pages of which are attached hereto at **Exhibit C**, at pp. 20-22 ("Sheehan Dep.").]

4. As of August 8, 2002 Ms. Sheehan, who was 32 years old, and Mr.Nadiger had been dating for several weeks. (Sheehan Dep. at 16-17).

5. At the Islander Restaurant, Ms. Sheehan and Mr. Nadiger shared a Scorpion Bowl, a drink made with various fruit juices and alcohol. They also ate chicken wings and chow mein. (Sheehan Dep. at 24-27).

6. After leaving the restaurant, Ms. Sheehan and Mr. Nadiger drove together to the Oakland Beach Club in Warwick where she drank two or three twelve (12) ounce beers as well as several shots of tequila. (Sheehan Dep. at 27-28 ).

7. After leaving the Oakland Beach Club, Ms. Sheehan drove Mr. Nadiger to his home at 30 Serenity Court in Warwick. They arrived at his home at approximately 5:30PM. (Sheehan Dep. at 28-29).

8. Soon after, Ms. Sheehan, Mr. Nadiger and his three children decided to go swimming in an above-ground pool that was owned by Mr. Nadiger and was located in his yard. (Sheehan Dep. at 29-30).

9. The subject pool ("pool") was an above-ground Johnny Weismuller Safari model manufactured by Delair. (Schall Dep. at 22, 34);(Copies of a pictures of the pool taken at Delair's 4/27/06 site inspection are attached hereto as **Exhibit D**).

10. The pool was manufactured between 1994 and 1998. Its dimensions are 18 feet

in diameter and 48 inches high. Delair manufactured the pool wall and frame. Delair did not manufacture or distribute the subject pool's ladder, liner, filter unit or skimmer. [*See* Delair's Supplemental Responses to First Set of Requests for Production of Documents Propounded by Plaintiff at Response No. 1 attached hereto as **Exhibit E**].

11. Delair has manufactured swimming pools and fences since 1967. (Schall Dep. at 7-8).

12. NAMCO distributes and sells above-ground swimming pools at retail stores throughout the country. (Radocchia Dep. at 13).

13. Prior to August 8, 2002, Delair sold NAMCO above-ground pools known as the a Johnny Weismuller Safari model manufactured by Delair. [*See* Delair's Response to Plaintiff's Request for Admission attached hereto as **Exhibit F**; (Radocchia Dep. at 14)].

14. Ms. Sheehan climbed the ladder to enter the pool. (Sheehan Dep. at 30).

15. Ms. Sheehan, Mr. Nadiger and his children played and splashed in the pool for about thirty minutes. (Sheehan Dep. at 31).

16. During that time, Ms. Sheehan used the ladder again to help some of the children out of the pool, and then she re-entered the pool, by using the ladder again. (Sheehan Dep. at 30).

17. After about thirty minutes, Ms. Sheehan pulled herself up to a sitting position on the coping around the top of the pool. (Sheehan Dep. at 31-33 ).

18. Coping is a piece of extruded aluminum that is around the top of the outside walls

of the subject pool that connects the various pieces of the pool together and prevents damage to the top surface of the wall. [(Schall Dep. at 10-14); *See* Deposition Transcript of Thomas Ebro, Plaintiff's pool safety expert witness, pertinent pages of which are attached hereto at **Exhibit G**, at p. 9 ("Ebro Dep."); **Exhibit D**; *See* Expert Report of Larry Paulick, NAMCO's pool safety expert attached hereto as **Exhibit H**, at p. 4 ("Paulick Report")].

19. The coping was approximately 6 ½ inches wide. (Schall Dep. at 26-33).

20. The coping was not intended for people to stand on. [(Schall Dep. at 26-33; Radocchia Dep. at 30); (Ebro Dep. at 79, 96); (Paulick Report at 4 )].

21. While Ms. Sheehan was playing with the children in the pool, and before she dove into the pool, she took note of the coping around the top edge of the pool and noticed "it wasn't springy, but it wasn't sturdy either. It was kind of loose." (Sheehan Dep. at 63-64).

22. Prior to her first dive, Ms. Sheehan boosted herself up to a sitting position and then to a standing position on the 6 ½ inch coping. She stood on the coping for about 20 seconds and then she intentionally dove into the pool, doing a "shallow dive" aimed across the pool, as opposed to a deep vertical dive aiming down. [(Sheehan Dep. at 31-33, 44-45); *See* a copy of Exhibit A2 to Sheehan Dep. on which Ms. Sheehan indicated in pen where she stood on the coping before diving into the pool.]

23. Ms. Sheehan intentionally dove in a manner to try to avoid hitting the bottom of the pool, because having been in the pool for about a half hour, she was aware that

the pool was shallow. (Sheehan Dep. at 45).

24. When Ms. Sheehan dove into the pool, the water was approximately 3 ½ feet deep. [*See* Deposition Transcript of Marvin Nadiger, eyewitness, pertinent pages of which are attached hereto at **Exhibit I** at p. 53-54 ("Nadiger Dep."); (Ebro Dep. at 59)].

25. Ms. Sheehan soon returned to the same area of the pool from which she dove the first time, and again pulled herself up to a sitting and then a standing position on the coping in order to dive into the pool again. [(Sheehan Dep. at 33-35, Sheehan Interrogatory Answer No. 22 attached hereto as **Exhibit J**; Exhibit A2 to Sheehan Dep].

26. After standing on the coping for about ten seconds, Ms. Sheehan intended to perform a second shallow dive. (Sheehan Dep. at 58).

27. While Ms. Sheehan was diving into the pool the second time, she lost her balance and dove into the pool at a steeper angle than her first dive and this time she struck the top of her head on the bottom of the pool. [(Sheehan Dep. at 34-35); **Exhibit J** ].

28. Ms. Sheehan does not know what caused her to lose her balance or how she slipped during her second dive. (Sheehan Dep. at 35, 57, 61).

29. Ms. Sheehan does not know where her arms and feet were positioned before and during her second dive. (Sheehan Dep. at 57).

30. Ms. Sheehan does not know how she entered the pool during her second dive. (Sheehan Dep. at 61).

31. Ms. Sheehan could only recall looking at her feet on the coping and then entering the water. (Sheehan Dep. at 69).

32. Mr. Nadiger watched both of Ms. Sheehan's dives into the pool and observed that she dove in to the pool at a steeper angle during her second dive. (Nadiger Dep. at 41-43).

33. As a result of her head striking the bottom of the pool, Ms. Sheehan suffered severe injuries to her spine which rendered her a quadriplegic. [*See* Report of Defendants' expert, Leon Kazarian, and the Report of Plaintiff's expert, Jamie Williams, attached hereto as **Exhibit K**].

34. The expert reports of the biomechanical engineers hired by plaintiff and defendants, respectively, both indicate that the symmetrical nature of the fractures to Ms. Sheehan's spine was caused by the axial loading of forces on her cervical spine caused by the top of her head striking the bottom of the pool. (**Exhibit K** ).

35. At the time of the accident, the subject pool had three warnings on it. [*See* copies of pictures of pool from Plaintiff's Responses to NAMCO's First Request for Production of Documents attached hereto as **Exhibit L**].

36. One warning was attached to the top ledge of the pool adjacent to the ladder and stated:

DANGER NO DIVING SHALLOW WATER DIVING MAY CAUSE DEATH OR PERMANENT INJURY.

The warning also included a pictogram of a figure of a person with its head striking the bottom of the pool. *See* **Exhibit L.**

37. Two other warnings were on both sides of the pool on the inside edges above water level and stated:

DANGER: NO DIVING-SHALLOW WATER *See* **Exhibit L.**

38. Ms. Sheehan did not read any of the danger warnings against diving before she dove into the pool. (Sheehan Dep. at 19-20; 73-75).

39. Ms. Sheehan stated that even if she had read the warnings about the danger of diving into the shallow water on the inner edge of the pool, she would have dove in anyway. (Sheehan Dep. at 66-67).

40. Before August 8, 2002, Ms. Sheehan had experience swimming and diving in pools. She swam in above-ground pools throughout her childhood. (Sheehan Dep. at 14-20).

41. The above-ground pools she had been in before August 8, 2002 were similar in size and in depth to the pool. In her life experience, she may very well have stood up and dove from the perimeter of an above-ground pool before August 8, 2002. (Sheehan Dep. at 14-20).

42. Several months before August 8, 2002, Ms. Sheehan had performed dives from the side of an in- ground pool in her apartment complex in North Carolina. While performing these dives, she dove into the middle of the pool where the water was about four feet deep. (Sheehan Dep. at 52-53, 78).

43. On August 8, 2002, both times when Ms. Sheehan dove into the pool, she knew the water was shallow. (Sheehan Dep. at 56).

44. Both before and at the time that she dove into the pool, Ms. Sheehan was aware

that diving into shallow water could be dangerous because she could hit her head on the bottom of the pool. (Sheehan Dep. at 54).

DELAIR GROUP LLC
By its Attorneys,

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh, Jr. #1139
Mary Cavanagh Dunn #6712
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
jvc@blishcavlaw.com
mcd@blishcavlaw.com

NORTH AMERICAN MARKETING CORPORATION
By its Attorneys,

/s/ Mark P. Dolan
Mark P. Dolan #3280
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
Telephone: 401-272-8800
Facsimile: 401-421-7218
ricedolan@ricedolan.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 18th day of July, 2007 I caused a true copy of the within *Statement of Undisputed Facts* to be electronically filed via ECF or regular mail as indicated to the following counsel of record:

Mark P. Dolan, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
ricedolan@ricedolan.com
(Via ECF)

David E. Maglio
David E. Maglio & Associates, P.C.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
dmaglio@magliolaw.com
(Via ECF)

Barry C. Reed, Esq.
Reed & Giordano, P.A.
101 Tremont Street
Boston, MA 02108
(Via Regular Mail)

/s/ Mary C. Dunn