# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

JENNIFER SHEEHAN,
Plaintiff.

VS. C.A. NO. 05-364-S

THE NORTH AMERICAN
MARKETING CORPORATION AND
DELAIR GROUP, L.L.C.,
Defendants.

DEPOSITION OF STEPHEN RADOCCHIA, a witness in the above-entitled cause, taken on behalf of the Plaintiff, before Jane M. Poore, Notary Public, RPR, in and for the State of Rhode Island, at the offices of David E. Maglio & Associates, P.C., 101 Dyer Street, Providence, Rhode Island, on November 8, 2006, at 11:00 A.M.

APPEARANCES:

FOR THE PLAINTIFF:
REED & GIORDANO
BY: BARRY C. REED, JR., ESQUIRE
101 TREMONT STREET
BOSTON, MA 02108
(617)426-1166

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, R.I. 02920
(401) 946-5500

EXAMINATION BY MR. REED .................. 4

E X H I B I T S



| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1A | PHOTOCOPY OF POOL AD (1 PG.) | 63 |
| 1B | PHOTOCOPY OF POOL AD (1 PG.) | 63 |



INSTRUCTIONS TO WITNESS: SEE PAGES 27, 51, 56





(DEPOSITION COMMENCED 11:00 A.M.)

STEPHEN RADOCCHIA

BEING DULY SWORN, DEPOSES AND TESTIFIES AS FOLLOWS:

THE REPORTER: Could you state your full name for the record, please.

THE WITNESS: Stephen Radocchia.

EXAMINATION BY MR. REED

Q. How do you spell Radocchia?
A. R-a-d-o-c-c-h-i-a.
Q. And, sir, where do you live?
A. In Glastonbury, Connecticut.
Q. Could you give me the street address?
A. 40 Greenswood Place.
Q. And how about a business address?
A. That would be 100 Sanrico, S-a-n-r-i-c-o, Drive, in Manchester, Connecticut.
Q. And you're employed by NAMCO?
A. Yes.
Q. And NAMCO stands for?
A. NAMCO stands for North American Marketing Corp. I am employed by NAMCO, L.L.C., which is a company that North American Marketing Corp. owns part of.
Q. Is it the same address?
A. Yes.
Q. Now, you understand you're here today pursuant to





a subpoena; is that correct?
A. Yes.
Q. And there was a deposition notice known as a 30(b)(6) deposition notice; did you have an opportunity to look at that document prior to today?
A. Yes.
Q. I'm going to show you a copy of it, and tell me if

that's something that you have reviewed prior to today?
A. Yes.
Q. And you're here today speaking on behalf of the NAMCO Corporation; is that correct?
A. Yes.
Q. So anything you say today, you understand will be binding on the corporate defendant NAMCO?
A. Yes.
Q. And did you review this 30(b)(6) document prior to today?
A. Yes.
Q. And you looked at all of the various categories, which I'm going to be discussing with you, and I believe there are 12 enumerated categories?
A. Yes.
Q. Are you the person most knowledgeable with respect





to each category listed on this 30(b)(6) notice?
A. I'd have to look at each point, but most likely, yes.
Q. When you reviewed these categories, were there any categories that you felt that, you know, hey, I might not be the best person with respect to this category?
A. No.
Q. Did you have to discuss any of these subject matters in these categories with any other

structure?
A. Just the Board of Directors.
Q. How many people are on the Board of Directors?
A. Seven.
Q. And do you answer to the Board of Directors?
A. Yes.
Q. Now, with respect to the categories set forth in this 30(b)(6) notice, one area of inquiry is on the lawsuits that you were involved in with above ground swimming pools that were either marketed or distributed by NAMCO. You're aware of that, right?
A. Yes.
Q. Does NAMCO get involved in the manufacture of swimming pools?
A. No.
Q. They exclusively distribute pools that are manufactured by other entities; is that correct?
A. We sell them retail, yes.
Q. And how many manufacturers do you deal with today?
A. In the above ground swimming pool itself or across the board?
Q. In the above ground swimming pool area?
A. Anywhere from three to five.
Q. And one is the defendant, Delair Corp., Correct?

MR. D'AMBRA: Are you talking about presently?
MR. REED: Yes.
A. Yes.
Q. And back in, say, the time of this accident, which was August of 2002, how many manufacturers did you deal with, with respect to the selling or distributing of above ground pools?
A. Three or four.
Q. And, again, one was Delair, correct?
A. Yes.
Q. What percentage of your sales volume was attributable to Johnny Weissmuller pools, if you know, back in 2002?
A. Approximately 30 percent.
Q. Now, you indicated earlier that you were directly involved in about five lawsuits where you gave deposition testimony?
A. Yes.
Q. Does NAMCO keep a record of any and all lawsuits it's been involved in?
A. I am hesitating because I am trying to remember if the files still exist, and I would say I would think so.
Q. Let me ask you this, when NAMCO gets sued or is



named in a lawsuit, some sort of file is created

at NAMCO?
A. Yes.
Q. And who is responsible for the creation of that file?
A. I would be.
Q. And where are these files kept?
A. They're kept at NAMCO.
Q. In your office?
A. In the archives.
Q. And is this a room designated as archives?
A. It's a couple of rooms, the warehouse, a variety of different places.
Q. But if there is a file, is it kept in a file cabinet, for instance?
A. Or transfile. File cabinets or transfiles.
Q. And how is it labeled or listed, if you know?
A. Probably just miscellaneous insurance information.
Q. When a claim is created, I assume one of the steps is you notify your insurance carrier?
A. Yes.
Q. If the case goes into suit, meaning a formal lawsuit is filed in court, do you get copies of, say, the complaint?





A. Yes.
Q. And do you keep those?
A. Yes.
Q. You referred to interrogatories earlier. If you

have to answer interrogatories, you keep those?
A. Yes.
Q. Do you keep any notes at all?
A. I would assume any notes would be in the file as well.
Q. And I think you indicated, too, that at some point in time sometimes these records are not always retained at the office?
A. The reason why I hesitated before is that we had a fire in our warehouse and office in 2001 where a lot of records were lost from previous years, and some of which would have likely been those archives, but in the normal course of practice, those would be kept in the office.
Q. Prior to today, did you ever do a search devoted to this lawsuit to determine how many lawsuits you have records of in your files?
A. No.
Q. But that could be obtained; is that fair to say?
A. Yes.
Q. And could you give me an approximation, say in the





last 10 years, how many lawsuits that you are aware of where NAMCO has been named as a defendant?
MR. D'AMBRA: Related to personal injuries from pool accidents?
MR. REED: Related to personal

Q. And do you know, does this document have a name?
A. It's just the use and installation instructions from the various manufacturers, whichever is packaging the pool.
Q. Is it fair to say that when a particular manufacturer, say, has a booklet for the, I assume, the installation of a pool, but there'll also be a description or a discussion about appropriate pool usage; is that fair to say?
A. Yes.
Q. And that's something that you've reviewed in the past?
A. I have seen.
Q. And is it your understanding -- let me ask you this question, is it your understanding that the





pool manufacturer, as well as NAMCO, with respect to pools that feature a coping that's around six or seven inches wide, generally, I guess, dissuade the general public from standing on such a top rail?
MR. D'AMBRA: Objection.
A. You're going to have to start again. I lost you when you paused.
Q. Is it your understanding, with respect to the above ground pools that feature a top rail of six or seven inches, that the manufacturer, as well as NAMCO, do not -- prohibit the general user from

standing on that deck?

A. I'm still confused about the question.

Q. To your knowledge, in your review of these documents that you referred to, has a manufacturer ever said that we do not expect the user of the pool to be standing on the coping?

MR. D'AMBRA: Objection. You can answer.

A. I don't recall.

Q. So that means there may have been a discussion of not wanting the user to stand on the coping, there may not have been, but sitting here today you don't recall?





A. Correct.

Q. Does NAMCO, as a public policy, have a prohibition against the ultimate user standing on a top rail that's only six or seven inches wide?

A. Can you say that again.

Q. Well, let me ask it this way, does NAMCO consider -- strike that. I think it will be easier this way, would you agree with me that NAMCO would consider any person who would dive head first into one of these above ground pools a misuse of its product?

A. Yes.

Q. And that is because that could create injury to the person; is that fair to say?

A. Yes.

Q. Does NAMCO consider jumping feet first into a pool, an above ground pool like this, a misuse of its product?
A. Yes.
Q. And has NAMCO ever indicated that in writing, that users should not be jumping into its pools?
A. Can you ask that question again.
Q. Has NAMCO ever issued anything in writing either warning the ultimate user or its buyer, hey, we don't want you jumping into our pools?





A. I'm stuck on the word issued.
Q. Are you aware, in all the years you worked at NAMCO, are you aware of seeing a document, a decal, a sticker, that says, you know, hey, you know, Joe Public, we don't want you jumping in our pools?
A. Yes.
Q. Could you tell me what type of document this is that you're referring to?
A. It would be varied. The manufacturers' instructions we talked about it before reference that. There are manufacturers' safety warnings, decals. The products themselves have those warnings on them. You pulled out the NSPI manual, which is something that has been used in the industry and given, available at NAMCO.
Q. The NSPI document that I just pulled out, are you