**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JENNIFER SHEEHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-364 S** |
| | ) | |
| **THE NORTH AMERICAN MARKETING CORPORATION and DELAIR GROUP, L.L.C.** | ) | |
| | ) | |
| **Defendants** | ) | |

**DEFENDANTS DELAIR GROUP L.L.C.'S AND NORTH AMERICAN MARKETING CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Defendants Delair Group L.L.C. ("Delair") and the North American Marketing Corporation ("NAMCO") hereby move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support hereof, Delair and NAMCO rely on the accompanying Memorandum of Law and their Statement of Undisputed Facts filed simultaneously herewith.

DELAIR GROUP LLC
By its Attorneys,

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh, Jr. #1139
Mary Cavanagh Dunn #6712
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
jvc@blishcavlaw.com
mcd@blishcavlaw.com

NORTH AMERICAN MARKETING CORPORATION
By its Attorneys,

/s/ Mark P. Dolan
Mark P. Dolan #3280
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
Telephone: 401-272-8800
Facsimile: 401-421-7218
ricedolan@ricedolan.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 18th day of July, 2007 I caused a true copy of the within Motion to be electronically filed via ECF, or regular mail as indicated to the following counsel of record:

Mark P. Dolan, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
ricedolan@ricedolan.com
(Via ECF)

David E. Maglio
David E. Maglio & Associates, P.C.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
dmaglio@magliolaw.com
(Via ECF)

Barry C. Reed, Esq.
Reed & Giordano, P.A.
101 Tremont Street
Boston, MA 02108
(Via Regular Mail)

/s/ Mary C. Dunn

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JENNIFER SHEEHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-364 S** |
| | ) | |
| **THE NORTH AMERICAN MARKETING CORPORATION and DELAIR GROUP, L.L.C.** | ) | |
| | ) | |
| **Defendants** | ) | |

**DEFENDANTS DELAIR GROUP L.L.C. AND NORTH AMERICAN MARKETING CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Delair Group L.L.C. ("Delair") and the North American Marketing Corporation ("NAMCO") submit the within Memorandum of Law in support of their Motion for Summary Judgment.

## Introduction

Delair is a limited liability company that manufactures swimming pools and fences. NAMCO is a corporation that distributes swimming pools for sale at retail stores throughout the country. Plaintiff Jennifer Sheehan ("Plaintiff" or "Ms. Sheehan") seeks to hold Delair and NAMCO liable for severe injuries she suffered when she dove into a shallow above-ground swimming pool manufactured by Delair and sold by NAMCO. Plaintiff asserts several theories of liability against Delair and NAMCO. Specifically, she alleges counts of negligence, breach of express warranty, breach of implied warranty, and strict liability.

Delair and NAMCO are entitled to summary judgment on all of Plaintiff's claims because the undisputed material facts demonstrate that Plaintiff as a matter of

law assumed the risk of her injury by intentionally diving into a shallow pool in knowing disregard of the open and obvious dangers associated with her actions. Furthermore, even when viewed in the light most favorable to the Plaintiff, the record is devoid of any material facts establishing that her injuries were proximately caused by any alleged acts or omissions of Delair and NAMCO, or by any alleged defects in the subject pool. Accordingly, Delair and NAMCO are entitled to judgment in their favor as a matter of law.

## Factual Background[1]

Delair is a New Jersey limited liability company with a principal place of business at 8600 River Road, Delair, New Jersey, 08110. [*See* Deposition Transcript of Fred Schall, Delair's 30(b)(6) witness, pertinent pages of which are attached hereto at Exhibit A, at p. 7 ("Schall Dep.")]. NAMCO is a Connecticut corporation with a principal place of business at 100 Sanrico Drive, Manchester, Connecticut. [*See* Deposition Transcript of Stephen Radocchia, NAMCO's 30(b)(6) witness, pertinent pages of which are attached hereto at Exhibit B, at p. 4 ("Radocchia Dep.")].

On August 8, 2002, at about 1:30 PM, Ms. Sheehan picked up Marvin Nadiger ("Mr. Nadiger") at work in Warwick, Rhode Island and then drove him in her car to the Islander Restaurant in Warwick. [*See* Deposition Transcript of Jennifer Sheehan, pertinent pages of which are attached hereto at Exhibit C, at pp. 20-22 ("Sheehan Dep.")]. As of August 8, 2002, Ms. Sheehan, who was 32 years old, and Mr.Nadiger

---

1 The facts and supportive documentation discussed herein are set forth in Delair and NAMCO's Statement of Undisputed Facts and are submitted in accordance with Local Rule Cv 56, and are incorporated herein by reference.

had been dating for several weeks. (Sheehan Dep. at 16-17). At the Islander Restaurant, Ms. Sheehan and Mr. Nadiger shared a Scorpion Bowl, a drink made with various fruit juices and alcohol. They also ate chicken wings and chow mein. (Sheehan Dep. at 24-27).

After leaving the restaurant, Ms. Sheehan and Mr. Nadiger drove together to the Oakland Beach Club in Warwick where she drank two or three twelve (12) ounce beers as well as several shots of tequila. (Sheehan Dep. at 27-28 ). After leaving the Oakland Beach Club, Ms. Sheehan drove Mr. Nadiger to his home at 30 Serenity Court in Warwick, arriving there at approximately 5:30PM. (Sheehan Dep. at 28-29).
Soon after, Ms. Sheehan, Mr. Nadiger and his three young children decided to go swimming in an above-ground pool that was owned by Mr. Nadiger and was located in his yard. (Sheehan Dep. at 29-30).

The subject pool ("pool") was an above-ground Johnny Weismuller Safari model manufactured by Delair. [(Schall Dep. at 22, 34);(Copies a pictures of the pool taken at Delair's 4/27/06 site inspection are attached hereto as Exhibit D)]. The pool was manufactured between 1994 and 1998. Its dimensions are 18 feet in diameter and 48 inches high. Delair manufactured the pool wall and frame. Delair did not manufacture or distribute the pool's ladder, liner, filter unit or skimmer. [*See* Delair's Supplemental Responses to First Set of Requests for Production of Documents Propounded by Plaintiff at Response No. 1 attached hereto as Exhibit E].

Delair has manufactured swimming pools and fences since 1967. (Schall Dep. at 7-8). NAMCO distributes and sells above-ground swimming pools at retail stores throughout the country. (Radocchia Dep. at 13). Prior to August 8, 2002, Delair sold

NAMCO above-ground pools known as the Johnny Weismuller Safari model manufactured by Delair. [*See* Delair's Response to Plaintiff's Request for Admission attached hereto as Exhibit C ; (Radocchia Dep. at 14)].

Ms. Sheehan climbed the ladder to enter the pool. (Sheehan Dep. at 30). She, Mr. Nadiger and his children played and splashed in the pool for about thirty minutes. (Sheehan Dep. at 31). During that time, Ms. Sheehan used the ladder again to help some of the children out of the pool, and then she re-entered the pool, by using the ladder again. (Sheehan Dep. at 30).

After being in the pool for about thirty minutes, Ms. Sheehan pulled herself up to a sitting position on the coping around the top of the pool. (Sheehan Dep. at 31-33 ). Coping is a piece of extruded aluminum that is around the top of the outside walls of the pool that connects the various pieces of the pool together and prevents damage to the top surface of the wall. [(Schall Dep. at 10-14); *see* Deposition Transcript of Thomas Ebro, Plaintiff's pool safety expert witness, pertinent pages of which are attached hereto at Exhibit G, at p. 7 ("Ebro Dep."); Exhibit D; *see* Expert Report of Larry Paulick, NAMCO's pool safety expert attached hereto as Exhibit H, at p. 4 ("Paulick Report")]. The coping was approximately 6 ½ inches wide. (Schall Dep. at 26-33). The coping was not intended for people to stand on. [(Schall Dep. at 26-33; Radocchia Dep. at 30); (Ebro Dep. at 79, 96); (Paulick Report at 4 )]. While Ms. Sheehan was playing with the children in the pool, and before she dove into the pool, she took note of the coping around the top edge of the subject pool and saw that "it wasn't springy, but it wasn't sturdy either. It was kind of loose." (Sheehan Dep. at 63-64). The water in the pool was shallow, approximately three and one half feet deep. [*See* Deposition Transcript of

Marvin Nadiger, eyewitness, pertinent pages of which are attached hereto at Exhibit I at p. 53-54 ("Nadiger Dep."); (Ebro Dep. at 59)].

Prior to her first dive, Ms. Sheehan boosted herself up to a sitting position and then to a standing position on the 6 ½ inch coping. She stood on the coping for about 20 seconds and then she intentionally dove into the pool, doing a "shallow dive" aimed across the pool, as opposed to a deep vertical dive aiming down. [(Sheehan Dep. at 31-33, 44-45)(*See* a copy of Exhibit A2 to Sheehan Dep. on which Ms. Sheehan indicated in pen where she stood on the coping before diving into the pool)]. She intentionally dove in a manner to try to avoid hitting the bottom of the pool, because having been in the pool for about a half hour, she was aware that the pool was shallow. (Sheehan Dep. at 45).

Ms. Sheehan soon returned to the same area of the pool from which she dove the first time, and again pulled herself up to a sitting and then a standing position on the coping in order to dive into the pool again. [(Sheehan Dep. at 33-35, Sheehan Interrogatory Answer No. 22 attached hereto as Exhibit J) (Exhibit A2 to Sheehan Dep)]. After standing on the coping for about ten seconds, Ms. Sheehan intended to perform a second shallow dive. (Sheehan Dep. at 58). While Ms. Sheehan was diving into the pool the second time, she lost her balance and dove into the pool at a steeper angle than her first dive and this time she struck the top of her head on the bottom of the pool. [(Sheehan Dep. at 34-35); Exhibit J].

Ms. Sheehan does not know what caused her to lose her balance or how she slipped during her second dive. (Sheehan Dep. at 35, 57, 61). She does not know where her arms and feet were positioned before and during her second dive (Sheehan Dep. at 57), nor does she know how she entered the pool during her second dive. (Sheehan Dep.

at 61). She could only recall looking at her feet on the coping and then entering the water. (Sheehan Dep. at 69). Mr. Nadiger watched both of Ms. Sheehan's dives into the pool and observed that she dove in to the pool at a steeper angle during her second dive. (Nadiger Dep. at 41-43).

As a result of her head striking the bottom of the pool, Ms. Sheehan suffered severe injuries to her spine which rendered her a quadriplegic. [*See* Report of defendant's expert, Leon Kazarian, and the report of plaintiff's expert, Jamie Williams, attached hereto as Exhibit K]. The expert reports of the biomechanical engineers hired by plaintiff and defendants, respectively, both indicate that the symmetrical nature of the fractures to Ms. Sheehan's spine was caused by the axial loading of forces on her cervical spine caused by the top of her head striking the bottom of the pool. *See* Exhibit K.

At the time of the accident, the pool had three warnings on it. [*See* copies of pictures of subject pool from Plaintiff's Responses to NAMCO's First Request for Production of Documents attached hereto as Exhibit L].

One warning was attached to the top of the pool ledge adjacent to the ladder and stated:

DANGER NO DIVING SHALLOW WATER DIVING MAY CAUSE DEATH OR PERMANENT INJURY.

The warning also included a pictogram of a figure of a person with its head striking the bottom of the pool. (*See* Exhibit L).

Two other warnings were on both sides of the pool on the inside edges above water level and stated:

DANGER: NO DIVING-SHALLOW WATER (*See* Exhibit L).

Ms. Sheehan did not read any of the danger warnings against diving before she dove into

the pool. (Sheehan Dep. at 19-20; 73-75). Ms. Sheehan stated that even if she had read the warnings about the danger of diving into the shallow water on the pool, she would have dove in anyway. (Sheehan Dep. at 66-67).

Before August 8, 2002, the Plaintiff had past experience swimming and diving in pools. She swam in above-ground pools throughout her childhood. (Sheehan Dep. at 14-20). The above-ground pools she had been in before August 8, 2002 were similar in size and in depth to the pool. In her life experience, she may very well have stood up and dove from the perimeter of an above-ground pool before August 8, 2002. (Sheehan Dep. at 14-20). Several months before August 8, 2002, Ms. Sheehan had performed dives from the side of an in-ground pool in her apartment complex in North Carolina. While performing these dives, she dove into the middle of the pool where the water was about four feet deep. (Sheehan Dep. at 52-53, 78).

Both times when Ms. Sheehan dove into the pool on August 8, 2002, she knew the water was shallow. (Sheehan Dep. at 56). Both before and at the time that she dove into the pool, Ms. Sheehan was aware that diving into shallow water could be dangerous because she could hit her head on the bottom of the pool. (Sheehan Dep. at 54).

**Summary Judgment Standard**

In deciding a motion for summary judgment, the critical question for the court is whether a genuine issue of material fact exists. *See Lynch v. Bank of America, N.A.*, 2007 U.S. Dist. LEXIS 43214 (D.R.I. June 13, 2007) at *2 citing *Crawford v. Cooper/T.Smith Stevedoring Co., Inc.*, 14 F. Supp. 2d 202,208 (D.R.I. 1998). The court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in its favor. *See Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006). After

the moving party has demonstrated the absence of a genuine issue of material fact in the record, the burden shifts to the nonmovant to show there is sufficient legally competent evidence for a jury to find for it on each essential element of its claims. *See DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997). Once the moving party meets its burden, if the nonmovant opposes the motion with only "conclusory allegations, improbable inferences and unsupported speculation" the motion should be granted. *See Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 13 (1st Cir. 1994).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). "[T]here must be evidence on which the jury could reasonably find for the plaintiff"; otherwise, the motion should be granted. *Id.* The Court's inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.*

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment against a party who fails to establish the existence of an essential element to her case, and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Supreme Court explained:

> In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has a burden of proof. *Id.* at 322-323.

## **Argument**

A. Summary Judgment Should Enter For Defendants on All Counts Because Plaintiff Assumed the Risk of Her Injury By Intentionally Diving Into the Pool With Knowledge of Its Depth and the Dangers Associated With It.

Summary judgment should enter because the undisputed facts demonstrate that the plaintiff assumed the risk of her injury when she voluntarily dove into the pool. Under Rhode Island law, assumption of the risk is an affirmative defense that, if proven, absolves a defendant of liability for having created an unreasonable risk. *Raimbeault v. Takeuchi Mfg. (U.S.) Ltd.*, 772 A.2d 1056, 1064 (R.I. 2001); quoting *Walker v. Jackson*, 723 A.2d 1115, 1117 (R.I. 1999). The defense is a complete bar to liability under each of the tort theories advanced by the plaintiff. *Raimbeault*, 772 A.2d at 1064; *Fiske v. MacGregor*, 464 A.2d 719, 729 (R.I. 1983).

To assume a risk of harm, a plaintiff "must know of the existence of the risk and appreciate its unreasonable character." *Raimbeault*, 772 A.2d at 1064. Whether a risk of harm has been assumed by the plaintiff is usually a question for the trier of fact. However, if the record suggests "that the factfinder can draw only one rational inference from the evidence on this issue, then the trial justice should grant a motion directed to the issue." *Id.* citing *Hennessy v. Pyne*, 694 A.2d 691, 699 (R.I. 1997); *D'Allesandro v. Tarro*, 842 A.2d 1063, 1067 (R.I. 2004) (summary judgment affirmed when plaintiff had knowledge that rocks were present in town's right-of-way); *see also Raimbeault*, 772 A.2d at 1064 (summary judgment affirmed when plaintiff had knowledge of the special hazards in using excavator); *Filosa v. Courtois Sand & Gravel Co.*, 590 A.2d 100, 104 (R.I. 1991) (judgment for defendants affirmed where decedent assumed risk by entering a partially demolished building); *Drew v. Wall*, 495 A.2d 229, 232 (R.I. 1985) (directed verdict

affirmed where decedent had knowledge of danger created by running an internal combustion engine in a closed pit); *Rickey v. Boden*, 421 A.2d 539, 544 (R.I. 1980) (directed verdict affirmed after plaintiff assumed risk of injury by choosing to ascend narrow stairway with no handrail on one side when other options were available).

In determining whether a plaintiff assumed a risk as a matter of law, the court must make a subjective examination of what the plaintiff knew at the time of the alleged incident. "In determining whether an individual was aware of a particular risk at the time of his or her injury, this Court will examine the record to learn 'what the particular individual in fact saw, knew, understood, and appreciated'." *D'Allesandro v. Tarro*, 842 A.2d 1063, 1067 (R.I. 2004), *Austin v. Lincoln Equipment Assocs. Inc.*, 888 F.2d 934, 937 (1st. Cir. 1989). This is a subjective standard that focuses solely on the observations and understandings of the plaintiff at the time of injury. *D'Allesandro,* 842 A.2d at 1067. (citations omitted); *Austin*, 888 F.2d at 937.

For example, in *Raimbeault v. Takeuchi Mfg. (U.S.) Ltd.*, 772 A.2d 1056 (R.I. 2001), the user of a track-driven excavator sued the manufacturer under theories of negligence and product liability, after he was injured when he became disoriented in the excavator's rotating cab and drove the excavator over an embankment. Among other claims, the plaintiff alleged that the design of the excavator was defective because it did not take into account a momentary lapse in memory by the operator about which direction he was facing. In affirming the trial court's granting of defendant's motion for judgment as a matter of law, the Supreme Court of Rhode Island held that the plaintiff, who had used the same type of equipment 60 to 120 times prior to the incident, had assumed the risk of injury by moving the excavator very close to the embankment. The court found

that plaintiff was aware that using the excavator on the edge of an embankment required extra precautions, but nonetheless he voluntarily chose to operate the excavator and assumed the risk of injury. *Id.* at 1064.

Similarly, in *D'Allesandro v. Tarro*, 842 A.2d 1063 (R.I. 2004), the Supreme Court of Rhode Island affirmed a summary judgment of assumption of the risk when a plaintiff, aware of rocks on a municipal property nonetheless chose to walk backwards while looking in a forward direction, and was injured in a fall. *Id.* at 1067.

Focusing on the plaintiff decedent's prior experience and background working with engines, the court in *Drew v. Wall*, 495 A.2d 229, 232 (R.I. 1985) affirmed a directed verdict when plaintiff died of carbon monoxide poisoning after he operated an internal combustion engine in a pit. The court held that the decedent's voluntary action of restarting an engine in a pit, after he already felt dizzy, constituted an assumption of risk that relieved the defendant of any liability for the decedent's death.

In *Rickey v. Boden*, 421 A.2d 539 (R.I. 1980), an employee chose to climb up a dangerous stairway, which she knew from experience had narrow treads and no handrail on one side, in order to go to a break room on the next floor. While climbing the stairs, the plaintiff lost her balance, fell, and was injured. The court determined that the employee was under no compulsion to use that particular break room and had several options available to her. In finding in favor of the defendant, the court determined that the plaintiff had voluntarily assumed the risk of injury. *Id.* at 543-44.

In *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 376 A.2d 329 (1977), citing the plaintiff's attendance at 30 or 40 ice hockey games and her first-hand knowledge that lofted pucks occasionally went into the crowd, the Supreme Court of Rhode Island

determined that the plaintiff voluntarily and knowingly assumed the risk that she could be struck by a puck while attending the hockey game. The court held that this assumption of risk served as a complete bar to the plaintiff's recovery. 119 R.I. at 76-77, 376 A.2d at 332.

When considering the decedent's knowledge of the dangers of entering a partially demolished building, the Court, in *Filosa v. Courtois Sand & Gravel Co.*, 590 A.2d 100 (R.I. 1991), focused on what the decedent knew and observed prior to his decision to enter into the structure. Noting that multiple warnings and the decedent's own observations, including witnessing a portion of the same wall collapse and injure one of his employees only moments before, made him aware of the dangerous condition of the building, the court held that the decedent had voluntarily assumed the risk of entering into the building in order to retrieve boxes of screws. The court held that the plaintiff had assumed the risk of injury, and accordingly, affirmed the judgment for the defendant. *Id.* at 104.

While there are no pool diving cases in Rhode Island, other jurisdictions that recognize the assumption of the risk defense have held as a matter of law that people who dive into shallow pools assume the risk of injury. *See Mullen-Hall v. Buranich*, 2003 WL 17420 at *3 (N.Y. Sup. Ct. Jan. 17, 2003)(granting summary judgment for pool owner and finding 11 year- old plaintiff assumed the risk of injury from diving into a shallow above ground pool when she swam in the pool before the injury, knew its depth, saw several warnings prohibiting diving displayed on the pool, and performed several shallow dives before her injury); *Sharpnack v. Hoffinger Indus., Inc.*, 479 S.E. 2d 435, 436-7 (Ga. 1996) cert. denied 1997 G. LEXIS (Ga. Mar. 7, 1997) (affirming summary judgment for pool manufacturer that a 15 year-old plaintiff assumed the risk of his injury when he was

rendered a quadriplegic after doing a flip from a mini-trampoline into a three and one half foot above ground swimming pool where he previously dove into the pool at an angle to avoid hitting the bottom).

In the instant case, Ms. Sheehan testified at her deposition about what she saw, knew and appreciated at the time of her injury as well as her prior experience with pools. On the day of her injury, and before she dove into the pool, she knew that the pool was shallow because she, Mr. Nadiger and his children played and splashed in the pool for about thirty minutes. (Sheehan Dep. at 31 and 45). While Ms. Sheehan was playing with the children in the pool, and before she dove into the pool, she noticed the coping around the top edge of the pool and found that "it wasn't springy, but it wasn't sturdy either. It was kind of loose." (Sheehan Dep. at 63-64).

Prior to her first dive, Ms. Sheehan boosted herself up from a sitting position to a standing position on the 6 ½ inch coping and she stood on the coping for about twenty seconds before she intentionally executed a "shallow dive" aiming across the pool, as opposed to a deep vertical dive aiming down. [(Sheehan Dep. at 31-33, 44-45)(*See* a copy of Exhibit A2 to Sheehan Dep. on which Ms. Sheehan indicates the place she dove from in pen on a picture of the pool)]. Ms. Sheehan intentionally dove in this particular manner in order to avoid hitting the bottom, because after swimming in the pool for about a half hour, she appreciated that the pool was shallow. (Sheehan Dep. at 45). Shortly after her first dive, Ms. Sheehan returned to the same area of the pool and again pulled herself up to a sitting and then a standing position on the coping to dive into the pool again. [(Sheehan Dep. at 33-35, Exhibit J; (Exhibit A2 to Sheehan Dep)].

After standing on the coping for about ten seconds, Ms. Sheehan intended to

perform a second shallow dive. (Sheehan Dep. at 58). While she was diving into the pool the second time, she lost her balance and dove into the pool at a steeper angle than the first time and her head struck the bottom. [(Sheehan Dep. at 34-35, Sheehan Interrogatory Answer No. 22)]. Ms. Sheehan does not know what caused her to lose her balance or how she slipped during her second dive. (Sheehan Dep. at 35, 57, 61). She does not know where her arms and feet were positioned before and during her second dive. (Sheehan Dep. at 57). She does not know how she entered the pool during her second dive. (Sheehan Dep. at 61). Ms. Sheehan could only recall looking at her feet on the coping and then entering the water. (Sheehan Dep. at 69). Mr. Nadiger watched Ms. Sheehan dive into the pool both times and testified she dove in at a steeper angle during her second dive. (Nadiger Dep. at 41-43).

Both times when Ms. Sheehan dove into the pool, she knew the water was shallow. (Sheehan Dep. at 56). Both before and at the time that she dove into the pool, Ms. Sheehan was aware that diving into shallow water could be dangerous because she could hit her head on the bottom of the pool. (Sheehan Dep. at 54). Prior to her dives, Ms. Sheehan had also noticed the coping around the top of the pool and noticed it was not sturdy and was "kind of loose." (Sheehan Dep. at 63-64).

With respect to her prior experience diving into pools, she testified that she swam in above-ground pools throughout her childhood. (Sheehan Dep. at 14-20). The above-ground pools she had been in before August 8, 2002 were similar in size and in depth to the subject pool. She may have stood up and dove from the perimeter of an above-ground pool before August 8, 2002. (Sheehan Dep. at 14-20). Several months before August 8, 2002, Ms. Sheehan had performed dives from the side of an in-ground pool in her

apartment complex in North Carolina. While performing these dives, she dove into the middle of the pool where the water was about four feet deep. (Sheehan Dep. at 52-53, 78).

In spite of her knowledge and prior experience she voluntarily decided to dive into the pool twice. Like the plaintiffs in *Mullen-Hall* and *Sharpnack*, her subjective awareness of the risk of hitting the bottom is evident because she admitted such and because on her first dive she dove into the pool at a different angle to avoid hitting the bottom. These undisputed facts reveal that the plaintiff was fully aware of the risks which she knowingly and voluntarily assumed when she intentionally dove into a shallow pool. It is inescapable that her state of mind was that of a person who assumed the risks of a dangerous activity which resulted in a serious injury to herself. As recently observed by the Rhode Island Supreme Court, diving into shallow water is an obvious risk and dangerous activity which a reasonable adult should know and understand. *See Bucki v. Hawkins*, 914 A.2d 491, 496 (R.I. 2007); Argument Section B.2 *infra.*

Here, Ms. Sheehan knew the water was shallow. She knew she could be injured by diving into shallow water. She dove in a manner to try to avoid the risk of injury that she perceived. She dove a second time with the intent of trying to avoid the risk of injury. In attempting a second dive, she lost her balance and her second dive resulted in serious injury when she hit the bottom, the precise risk she voluntarily assumed by diving into the shallow water. These circumstances amount to a classic example of an assumption of the risk. Because the only reasonable inference a factfinder could draw from the facts in the record is that she knowingly and voluntarily assumed the risk of her injury, as a matter of law, summary judgment should enter for Delair and NAMCO.

B. Summary Judgment Should Enter For Defendants Because the Plaintiff Has Failed to Demonstrate That The Pool Was The Proximate Cause Of Her Injury, That Defendants Failed To Warn Her Of the Dangers of Diving, Or That The Pool Was Defectively Designed.

Plaintiff cannot present material facts from which a jury could reasonably infer that the pool was defective and that the defect caused her injury. In analyzing products liability claims, Rhode Island had adopted the doctrine of strict liability in tort as set forth in the Restatement (Second) Torts § 402A (1965). *See Ritter v. Narragansett Elec. Co.*, 109 R.I. 176, 187-90, 283 A.2d 255, 261-262 (1971). In accordance with this doctrine, the plaintiff must prove five essential elements:

> (1) a defect in the design or construction of the product;
> (2) that the defect existed at the time the product left the hands of the defendant;
> (3) that the defect rendered the product unreasonably dangerous, and by unreasonably dangerous it is meant that there was a strong likelihood of injury to a user who was unaware of the danger of utilizing the product in a normal manner;
> (4) that the product was being used in a way in which it was intended at the time of the accident; and
> (5) that the defect was the proximate cause of the accident and the plaintiff's injuries.

*See Jodoin v. Toyota Motor Corp.*, 284 F.3d 272, 276 (1st Cir. 2002) citing *Raimbeault*, 772 A.2d at 1063 at 1063 (collecting cases); *Crawford v. Cooper/T.Smith Stevedoring Co., Inc.*, 14 F.Supp. 2d 202, 211 (D.R.I. 1998).

In the instant case, Plaintiff has completely failed to present an issue of material fact on at least three of these required elements. At most, Plaintiff has alleged that she somehow lost her balance on the coping, but has not specifically shown how the alleged product defect-- the width of the coping-- caused her to lose her balance or made any

difference in her voluntary decision to engage in the prohibited activity of diving into a shallow pool. It is undisputed that it was her head-first entry into the pool that caused her injury. Furthermore, it is undisputed that she was not using the pool in the way in which it was intended or in a normal manner when she stood on the coping for the purpose of diving into the shallow pool. Significantly, she testified that she was aware of the depth of the pool and of the danger of hitting her head on the shallow bottom of the pool, but she elected to dive in anyway. *See* Argument Section A., *supra*.

In addition, Plaintiff has not alleged any product liability theory other than the alleged design defect of the coping in her Amended Complaint, although her attorney subsequently indicated that she is in fact proceeding on a failure-to-warn theory.[2] Thus, as discussed more fully below, summary judgment should enter for Delair and NAMCO under either theory.

1. Plaintiff's Injuries Were Proximately Caused By Her Own Voluntary Actions Not By Any Defect In The Pool.

The Plaintiff must show that the alleged product defect proximately caused her injury. *See Jodoin,* 284 F.2d at 276. To meet her burden on this essential element of her claim she must present facts from which a jury could do more than speculate about the proximate cause of her injury. *See Thomas v. Amway Corp.*, 488 A.2d 716, 722, ( R.I. 1985). In *Thomas*, the court found the plaintiff had not met her burden of proof on her

---

2 Plaintiff's Amended Complaint alleges that she lost her balance on the "unreasonably narrow, dangerous and defective decking surrounding the perimeter of the subject poll and entered the pool at an angle which caused her to strike her head on the pool floor sustaining a burst fracture of the cervical vertebrae" and does not mention any facts or even allegations concerning any failure to warn by Delair or co-defendant NAMCO. However, at the deposition of Thomas Ebro, plaintiff's attorney indicated he would be pursing a failure to warn claim to the extent that Ebro addressed one in his expert report and testimony.

negligence and strict liability claims when all she had shown was that the use of the product resulted in injury, without demonstrating the necessary proximate relationship between a defect and the injury. *Id.*

In a later case, the First Circuit reached a similar result when it upheld a directed verdict in favor of a lawnmower manufacturer finding that the plaintiff's voluntary placement of his hand into the spinning blade of the mower proximately caused his injury, not any defect in the blade itself. *See Kuras v. International Harvester Co.*, 820 F.2d 15, 18 (1st Cir. 1987). *See also Olshansky v. Rehrig Int'l*, 872 A.2d 282, 288 (R.I. 2005) (affirming summary judgment for defendant shopping cart manufacturer on plaintiff's product liability and negligence claims where plaintiff could not show how the alleged defect-- the basket separating from the wheels-- was caused by the manufacturer's negligence).

Here, Plaintiff has testified that she does not know how she entered the pool the second time. Specifically, she testified that while she was attempting to dive into the pool the second time, she lost her balance and dove into the pool at a steeper angle than the first time and her head struck the bottom. [(Sheehan Dep. at 34-35, Exhibit J]. She does not know what caused her to lose her balance or how she slipped during her second dive. (Sheehan Dep. at 35, 57, 61). She does not know where her arms and feet were positioned before and during her second dive, or how she entered the pool during her second dive. (Sheehan Dep. at 57, 61). All she could recall was looking at her feet on the coping and then entering the water. (Sheehan Dep. at 69).

While it is undisputed, based on the analysis of her injuries by experts for both parties and testimony from an eyewitness, that she entered the pool headfirst while

attempting to dive, it is unknown how this entry was in anyway caused by the alleged product defect in the pool--the width of the coping. In a case with similar facts, an Illinois appellate court affirmed a motion to dismiss in favor of the defendant homeowner on a 13 year- old plaintiff's negligence claim because she did not allege facts explaining how the injury she suffered while entering an above-ground pool headfirst were caused by any negligent acts or omissions of the homeowner. *See Barham v. Knickrehm*, 661 N.E. 2d 1166, 1169-70 (Ill. App. Ct. 1996). The plaintiff in *Barham* did not allege whether she jumped headfirst, feet first, sideways or backwards into the pool.[3] *Id. See also Campbell v. Muswim Pools, Inc.*, 537 N.Y.S. 2d 412, 412 (N.Y. App. Div. 1989)(finding the plaintiff decedent's conduct was the sole proximate cause of his injury when he dove "either impulsively or deliberately" into the 4-foot above-ground swimming pool); *see also Waldman v. Shipyard Marina, Inc.*, 102 R.I. 366, 371; 230 A.2d 841, 844 (1967)(explaining that in Rhode Island a reasonable inference must be drawn from an established fact and cannot be based on an inference drawn from another inference).

Because Ms. Sheehan cannot even identify what it was that caused her to lose her balance she has failed to sustain her burden of presenting a material fact from which a jury could reasonably infer anything other than her injury was caused by her intentional dive into a shallow pool. Without engaging in speculation or conjecture, she cannot demonstrate (and a jury could not find) how the coping, or any other part of the pool, made any difference in her voluntary decision to mount the coping and to dive into the

---

3 Plaintiff alleged that she "jumped off the wooden decking towards the bottom of the pool/ striking her head and/or neck on the side of the wooden pool decking and/or the bottom and/or side of the pool, thereby fracturing her spinal column and becoming paralyzed to the extent of becoming a quadriplegic." *Barham*, 661 N.E. 2d at 1170.

shallow pool. While it is clear that her injury resulted from her use of the pool, she has not presented any facts to demonstrate how her injury was proximately caused by any defect in the pool, and has therefore failed to establish an essential element of her claim. *See Celotex* at 322-323.

2. Delair and NAMCO Had No Duty To Warn Plaintiff Of The Open And Obvious Danger Of Diving Into Shallow Water.

Plaintiff has not alleged how either defendant failed to warn her of the danger of diving into the pool, or how such a failure caused her injuries. It is well-established law in Rhode Island and in many other jurisdictions that because the risk of serious injury from diving into shallow water is open and obvious there is no duty to warn a plaintiff of such a risk. *See Bucki*, 914 A.2d at 496-497 (affirming directed verdict for defendant landowner on plaintiff's failure to warn claim where plaintiff dove headfirst off a dock into a lake without determining its depth, and finding that the danger of diving into shallow water was open and obvious to a 24 year-old man, regardless of whether a sign was erected alerting him to the danger); *O'Sullivan v. Shaw,* 726 N.E. 2d 951, 957 (Mass. 2000)(affirming summary judgment for defendant homeowner where 21 year-old plaintiff dove into shallow end of in-ground pool and injured himself while attempting to perform a "shallow dive" to avoid hitting the bottom and finding no duty to warn of the open and obvious danger of diving into the shallow end); *Stopczynski v. Woodcox*, 671 N.W. 2d 119, 123-124 (Mich. Ct. App. 2003)(reversing lower court denial of summary judgment to defendant homeowners because homeowner had no duty to warn 17 year-old plaintiff who died as a result of diving into an aboveground pool of the open and obvious danger of diving into four feet of water); *Siver v. Campbell*, 2001 WL 694485 at *3(Mich. Ct. App. Mar. 30, 2001)(affirming lower court grant of summary judgment to defendant

homeowner on 12 year-old plaintiff's premises liability claim and noting analysis under a products liability claim would be the same-no duty to warn of the open and obvious risk of diving into shallow above-ground swimming pool); *Donacik v. Pool Mart, Inc.*, 705 N.Y.S. 2d 784, 785 (N.Y. App. Div. 2000)(affirming summary judgment for manufacturer of pool and homeowner finding no duty to warn where child either slipped and fell or dove into four foot above ground pool);*Schremp v. Haugh's Products*, 1997 WL 760900 at *3 (Ohio Ct. App. Nov. 19, 1997)(affirming lower court grant of summary judgment for defendant homeowner and pool manufacturer finding no duty to warn 23 year -old plaintiff of the open and obvious danger of diving into four foot above-ground pool); *Lederman v. Pacific Indus., Inc.*, 119 F.3d 551, 555 (7th Cir. 1997)(affirming summary judgment for pool manufacturer on plaintiff's failure to warn claim finding no duty to warn 31 year-old plaintiff of danger of diving into above ground pool with no depth markers or warning signs because the danger of such a dive was obvious to a reasonable adult in his position, since he had been swimming in the pool for an hour before and knew that the pool was shallow in parts and even though he attempted a shallow dive and did not recall exactly how he entered the water); *Edmonds v. Fodera*, 658 N.Y.S. 2d 325, 326 (N.Y. App. Div. 1997) appeal denied 686 N.E. 2d 1365 (N.Y. 1997)(reversing jury verdict in favor of landowners finding they had no duty to warn plaintiff of danger of diving into above ground pool where based on his observations of other party guests in the pool and his plain common sense he should have known the pool was shallow); *Mallard v. Hoffinger Indus., Inc.*, 533 N.W. 2d 1, 2 (Mich. Ct. App. 1995)(affirming summary judgment for pool manufacturer finding no duty to warn 13 year-old plaintiff of open and obvious danger of diving into above ground pool and plaintiff need not understand the

precise nature of every injury that may result it is enough that he appreciate the obvious general danger of diving into shallow water); *Macey v. AAA-1 Pool Builders and Serv. Co.* at *4 (Del. Super. Ct. Apr. 30, 1993)(affirming summary judgment for defendant pool manufacturers finding no duty to warn 34 year- old plaintiff of danger of diving into above ground pool and noting test for open and obvious danger is objective and focused on the typical user's knowledge and whether risk is apparent and commonly recognized); *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W. 2d 208, 210 (Mich. 1992)(affirming summary judgment and finding a pool manufacturer has no duty to warn product users of the dangers of diving into a shallow above ground pool because they are readily apparent and visible upon casual inspection and can be reasonably expected to be recognized by the average user of ordinary intelligence).

In the instant case, Plaintiff has not alleged any facts in her complaint or in her answers to interrogatories in support of a claim that Delair or NAMCO's failure to warn her of the dangers of diving into shallow water caused her injury. Summary judgment is appropriate on this procedural basis alone. *See Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514-515 (1st Cir. 1988) (explaining that even under the minimal requirements of "notice pleading", a plaintiff must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory"). Plaintiff's only testimony with respect to the three warnings that were on the pool at the time of her injury was that she did not see or read any of the warnings before she dove into the pool. (Sheehan Dep. at 19-20; 73-75). Significantly, she candidly stated that even if she had read one of the warnings along the inner edge of the pool, she would have dove into the pool anyway. (Sheehan Dep. at 66-67).

At the time of the accident, the subject pool had three warnings on it. One warning was attached to the top ledge of the pool adjacent to the ladder and stated:

> DANGER NO DIVING SHALLOW WATER DIVING MAY CAUSE DEATH OR PERMANENT INJURY.

The warning also included a pictogram of a figure of a person with its head striking the bottom of the pool. (*See* copies of pictures of subject pool from plaintiff's responses to NAMCO's First Request for Production of Documents attached hereto as Exhibit L). Two more warnings were placed on the inner edge of the pool above the water line and stated:

> DANGER: NO DIVING-SHALLOW WATER (*See* Exhibit L).

Significantly, Ms. Sheehan has not even alleged that if she had seen or read these warnings they would have prevented her from intentionally diving into the pool, but has in fact testified to the exact opposite. Importantly, while she did not read any warnings on the subject pool, she testified that she had previously dove into shallow water and was aware of the risks of such actions.

Summary judgment should enter in favor of the defendants on Plaintiff's failure to warn theory because she has failed both procedurally and substantively to present any facts from which a jury could reasonably infer that the presence or absence of any warnings provided by either Delair or NAMCO in any way caused her injuries. *See Celotex*, 477 U.S. at 322-323.

3. Defendants Had No Duty to Design A Product to Protect Plaintiff from Open and Obvious Dangers Or From Dangers Caused by Using the Product in an Unintended Manner.

Plaintiff has alleged that the pool was defectively designed because the coping was too narrow. She must show that this alleged defect rendered the pool unreasonably dangerous. By "unreasonably dangerous" it is meant that there was a strong likelihood of injury to a user who was unaware of the danger of utilizing the pool in a normal manner, and that the pool was being used in a way in which it was intended at the time of the accident. *See Jodoin,* 284 F. 3d at 276.

The Rhode Island Supreme Court further explained the meaning of "unreasonably dangerous" as follows:

> The phrase "unreasonably dangerous" is to be viewed as meaning that the defect in the product establishes a strong likelihood of injury to the user or consumer thereof. The emphasis upon the likelihood of injury *takes into account the consumer's or user's knowledge of danger*. This approach seeks to protect the consumer or user who is unaware of the danger involved in the use of a product in a way it was intended to be used or in using the product in a normal manner. *This approach does not protect the consumer who uses the product in a different way than that intended nor does it protect the consumer or user when he uses a product in a way in which he knows requires certain precautions be taken to make the product safe in such a use. Jackson v. Corning Glass Works*, 538 A.2d 666, 668 (R.I. 1988), quoting *Ritter,* 109 R.I. at 191, 283 A.2d at 263.(emphasis added).

In *Jackson*, the plaintiff alleged that Pyrex lids designed and manufactured by the defendant were defectively designed because when they were stacked in his cupboard they fell on him and injured his eye. *Id.* at 669. On these facts and applying the rationale cited

above, the court found that the hazards of stacking glass cookware objects and lids on a shelf that was not quite level were obvious to a consumer or user and that in the absence of any specific testimony about how exactly they fell, a jury could not find that the design of the lids was unreasonably dangerous. *Id.* at 668-669. The hazard created by stacking cookware "ought to be well known to the average consumer." *Id.* at 669.

Likewise, the danger of diving into 3 ½ feet of water also should be open and obvious to the average person, particularly to an adult who had previous experience swimming and diving in shallow water. *See Bucki* at 492, *13-14. *See also Colosimo v. May Dep't Store Co.*, 466 F.2d 1234, 1235-36 (3rd Cir. 1972)(reversing jury verdict for plaintiff in favor of defendant pool manufacturer where plaintiff claimed the pool liner and top of ladder were defectively designed finding plaintiff was aware of risk of striking the bottom of the pool and had performed shallow dives previously and it was his "error of judgment in the execution of a shallow dive, rather than any lack of warning or any slippery condition of the pool" that proximately caused his injury); *Mallard v. Hoffinger Indus., Inc.*, 533 N.W. 2d 1, 2 (Mich. Ct. App. 1996)(upholding summary judgment in favor of defendant pool manufacturer finding that because the risk of harm from hitting the bottom of a shallow pool is open and obvious, defendant had no duty to design safety features to protect plaintiff from injuries suffered from striking the bottom of the pool).

In the instant case, the width of the coping did not make the product unreasonably dangerous because the width of the coping did not cause the plaintiff's injuries. Coping is a piece of extruded aluminum that is around the top of the outside walls of the subject pool that connects the various pieces of the pool together and prevents damage to the top surface of the wall. [(Schall Dep. at 10-14); (Ebro Dep. at 9); Exhibit D]. The coping that

Ms. Sheehan decided to dive from was approximately 6 ½ inches wide. (Schall Dep. at 26-33). The coping is not intended for people to stand on. [(Schall Dep. at 26-33); (Radocchia Dep. at 30); (Ebro Dep. at 79,96);(Paulick Report at 4 )]. Earlier, while Ms. Sheehan was playing with the children in the pool, and before she dove into the pool, she observed the coping around the top edge of the subject pool and noticed "it wasn't springy, but it wasn't sturdy either. It was kind of loose." (Sheehan Dep. at 64).

Plaintiff's injuries were caused when her head struck the bottom of the subject pool during her intentional dive into the pool. She has not shown how the width of the coping presented a "strong likelihood of injury to a user who was unaware of the danger of utilizing the product in a normal manner." She has revealed that she was aware of the dangers of diving into the pool, and despite her knowledge of this danger she dove into the pool. Importantly, by standing and diving from the coping, which was not designed or intended for that purpose, Ms. Sheehan was not using the pool in the manner in which it was intended to be used or in a normal manner and as a result she fails to establish by probative evidence how the design of the coping was unreasonably dangerous.

C. Summary Judgment Should Enter for Defendants on Plaintiff's Claims For Breaches of the Implied Warranty of Merchantability and Express Warranty Because Plaintiff Has Not Presented Essential Facts On Either Claim.

Finally, just as Plaintiff has not met her burden to show facts on each of the essential elements of her claim that the pool was defective, she likewise cannot prove that Delair or NAMCO violated any express or implied warranties that the pool was safe for normal use. To establish that a defendant has breached the implied warranty of merchantability, a plaintiff must prove a product is unfit for its ordinary purpose. *See Thomas v. Amway*, 488 A.2d at 719. Plaintiff has not presented any facts from which a

jury could reasonably infer that the pool was not fit for its ordinary purpose when used in its intended manner. *See* Argument Section B.1-3, *supra*. In addition, Plaintiff has not presented any facts from which a jury could infer that she relied upon any express statements or representations made by either Delair or NAMCO. *See Thomas* at 488 A.2d at 719-720. In fact, the only express representations made by either defendant were the three warnings that specifically warned about the dangers of diving.

**Conclusion**

WHEREFORE, Delair and NAMCO respectfully requests that summary judgment be entered in their favor against all claims of the Plaintiff.

DELAIR GROUP LLC
By its Attorneys,

/s/ Joseph V. Cavanagh, Jr.

Joseph V. Cavanagh, Jr. #1139
Mary Cavanagh Dunn #6712
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
jvc@blishcavlaw.com
mcd@blishcavlaw.com

NORTH AMERICAN MARKETING CORPORATION
By its Attorneys,

/s/ Mark P. Dolan

Mark P. Dolan #3280
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
Telephone: 401-272-8800
Facsimile: 401-421-7218
ricedolan@ricedolan.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 18th day of July, 2007 I caused a true copy of the within document to be electronically filed via ECF or regular mail as indicated to the following counsel of record:

Mark P. Dolan, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
ricedolan@ricedolan.com
(Via ECF)

David E. Maglio
David E. Maglio & Associates, P.C.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
dmaglio@magliolaw.com
(Via ECF)

Barry C. Reed, Esq.
Reed & Giordano, P.A.
101 Tremont Street
Boston, MA 02108
(Via Regular Mail)

/s/ Mary C. Dunn