UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JENNIFER SHEEHAN )
Plaintiff, )
)
VS. ) C.A. NO. 05-364S
)
THE NORTH AMERICAN MARKETING )
CORPORATION and DELAIR )
GROUP, L.L.C., )
)
Defendants. )

**PLAINTIFF, JENNIFER SHEEHAN'S RESPONSE TO DEFENDANTS DELAIR GROUP L.L.C. AND NORTH AMERICAN MARKETING CORPORATION'S LOCAL RULE CV 56 STATEMENT OF UNDISPUTED FACTS**

1. Delair is a New Jersey limited liability company with a principal place of business at 8600 River Road, Delair, New Jersey, 08110. (See Deposition Transcript of Fred Schall, Delair's 30(b)(6) witness, pertinent pages of which are attached hereto at **Exhibit A**, at p. 7 (" Schall Dep.").

**Response:** Agreed

2. NAMCO is a Connecticut corporation with a principal place of business at 100 Sanrico Drive, Manchester, Connecticut. (See Deposition Transcript of Stephen Radocchia, NAMCO's (30)(b)(6) witness, pertinent pages of which are attached hereto at **Exhibit B**, at p. 4 ("Radocchia Dep.").

**Response:** Agreed

3. On August 8, 2002, at about 1:30 PM, Plaintiff Sheehan ("Plaintiff' or "Ms. Sheehan") picked up Marvin Nadiger ("Mr. Nadiger") at work in Warwick, R.I. and then drove him in her car to the Islander Restaurant in Warwick. (See Deposition Transcript of Jennifer Sheehan, pertinent pages of which are attached hereto at **Exhibit C,** at pp. 20-22 ("Sheehan Dep.").

**Response:** Agreed

4. As of August 8, 2002 Ms. Sheehan, who was 32 years old, and Mr. Nadiger had been dating for several weeks. (Sheehan Dep. at 16-17).

**Response:** Agreed

5. At the Islander Restaurant, Ms. Sheehan and Mr. Nadiger shared a Scorpion Bowl, a drink made with various fruit juices and alcohol. They also ate chicken wings and chow mein. (Sheehan Dep. at 24-27).

**Response:** Agreed

6. After leaving the restaurant, Ms. Sheehan and Mr. Nadiger drove together to the Oakland Beach Club in Warwick where she drank two or three twelve (12) ounce beers as well as several shots of tequila. (Sheehan Dep. at 27-28)

**Response:** **Disagreed.** With respect to amount of tequila consumed. Witness testified she could not recall how much tequila she had, she testified she had 2 shots at the most. (Sheehan Dep. at 27-28)

7. After leaving the Oakland Beach Club, Ms. Sheehan drove Mr. Nadiger to his home at 30 Serenity Court in Warwick. They arrived at his home at approximately 5:30 PM. (Sheehan Dep. at 28-29)

**Response:** Agreed

8. Soon after, Ms. Sheehan, Mr. Nadiger and his three children decided to go swimming in an above-ground pool that was owned by Mr. Nadiger and was located in his yard. (Sheehan Dep. at 29-30).

**Response:** Agreed

9. The subject pool ("pool") was an above-ground Johnny Weismuller Safari model manufactured by Delair. (Schall Dep. at 22,34); Copies of a pictures of the pool taken at Delair's 4/27/06 site inspection are attached hereto as **Exhibit D**).

**Response:** Agreed

10. The pool was manufactured between 1994 and 1998. Its dimensions are 18 feet in diameter and 48 inches high. Delair manufactured the pool wall and frame. Delair did not manufacture or distribute the subject pool's ladder, liner, filter unit or skimmer. (See Delair's Supplemental Responses to First Set of Requests for Production of Documents Propounded by Plaintiff at Response No. 1 attached hereto as **Exhibit E**).

**Response:** Agreed

11. Delair has manufactured swimming pools and fences since 1967. (Schall Dep. at 7-8).

**Response:** Agreed

12. NAMCO distributes and sells above-ground swimming pools at retail stores throughout the country. (Radocchia Dep. at 13).

**Response:** Agreed

13. Prior to August 8, 2002, Delair sold NAMCO above-ground pools known as the a Johnny Weismuller Safari model manufactured by Delair. (See Delair's Response to Plaintiff's Request for Admission attached hereto as **Exhibit F**; (Radocchia Dep. at 14).

**Response:** Agreed

14. Ms. Sheehan climbed the ladder to enter the pool. (Sheehan Dep. at 30).

**Response:** Agreed

15. Ms. Sheehan, Mr. Nadiger and his children played and splashed in the pool for about thirty minutes. (Sheehan Dep. at 31).

**Response:** Agreed

16. During that time, Ms. Sheehan used the ladder again to help some of the children out of the pool, and then she re-entered the pool, by using the ladder again. (Sheehan Dep. at 30).

**Response:** Agreed

17. After about thirty minutes, Ms. Sheehan pulled herself up to a sitting position on the coping around the top of the pool. (Sheehan Dep. at 31-33).

**Response:** Agreed

18. Coping is a piece of extruded aluminum that is around the top of the outside walls of the subject pool that connects the various pieces of the pool together and prevents damage to the top surface of the wall. [(Schall Dep. at 10-14); See Deposition Transcript of Thomas Ebro, Plaintiff's pool safety expert witness, pertinent pages of which are attached hereto at **Exhibit G**, at p. 9 ("Ebro Dep,"); **Exhibit D**; See Expert Report of Larry Paulick, NAMCO's pool safety expert attached hereto as **Exhibit H**, at p. 4 ("Paulick Report").

**Response:** Agreed

19. The coping was approximately 6 ½ inches wide. (Schall Dep. at 26-33).

**Response:** **Disagreed.** The witness testified for the defendant Delair that the coping was 6 inches wide (pg. 26).

20. The coping was not intended for people to stand on. ((Schall Dep. at 26-33; Radocchia Dep. at 30); (Ebro Dep. at 79, 96); (Paulick Report at 4).

**Response:** Agreed

21. While Ms. Sheehan was playing with the children in the pool, and before she dove into the pool, she took note of the coping around the top edge of the pool and noticed "it wasn't springy, but it wasn't sturdy either. It was kind of loose". (Sheehan Dep. at 63-64).

**Response:** Agreed

22. Prior to her first dive, Ms. Sheehan boosted herself up to a sitting position and then to a standing position on the 61/2 inch coping. She stood on the coping for about 20 seconds and then she intentionally dove into the pool, doing a "shallow dive" aimed across the pool, as opposed to a deep vertical dive aiming down. (Sheehan Dep. at 31-33, 44-45); See a copy of **Exhibit A2** to Sheehan Dep. on which Ms. Sheehan indicated in pen where she stood on the coping before diving into the pool).

**Response:** Agreed

23. Ms. Sheehan intentionally dove in a manner to try to avoid hitting the bottom of the pool, because having been in the pool for about a half hour, she was aware that the pool was shallow. (Sheehan Dep. at 45.)

**Response:** Agreed in part. Disagree to assertion that the shallow dive was being done solely to avoid hitting bottom. She testified that she was diving shallowly to get to the other side. She also testified that she was not purposely avoiding the bottom, but rather she wasn't aiming toward the bottom. (Pg. 45).

24. When Ms. Sheehan dove into the pool, the water was approximately 3 ½ feet deep. See Deposition Transcript of Marvin Nadiger, eyewitness, pertinent pages of which are attached hereto at **Exhibit I** at p. 53-54 ("Nadiger Dep."); (Ebro Dep. at 59).

**Response:** Agreed

25. Ms. Sheehan soon returned to the same area of the pool from which she dove the first time, and again pulled herself up to a sitting and then a standing position on the coping in order to dive into the pool again. (Sheehan Dep. at 33-35, Sheehan Interrogatory Answer No. 22 attached hereto as **Exhibit J**; Exhibit A2 to Sheehan Dep.

**Response:** Agreed

26. After standing on the coping for about ten seconds, Ms. Sheehan intended to perform a second shallow dive. (Sheehan Dep. at 58).

**Response:** Agreed

27. While Ms. Sheehan was diving into the pool the second time, she lost her balance and dove into the pool at a steeper angle than her first dive and this time she struck the top of her head on the bottom of the pool. [(Sheehan Dep. at 24-35); **Exhibit J**.

**Response:** Agreed in part. Would also add that she testified that her foot slipped causing her to lose her balance (pg. 35)

28. Ms. Sheehan does not know what caused her to lose her balance or how she slipped during her second dive. (Sheehan Dep. at 35,57,61).

**Response:** **Disagreed.** To the extent that the narrow six inch coping which was unstable would have played a role causing her to loose her balance and slip. She testified that she lost her balance on that little decking and it propelled her into the pool. (pg. 62,63)

29. Ms. Sheehan does not know where her arms and feet were positioned before and during her second dive. (Sheehan Dep. at 57.)

**Response:** Agreed

30. Ms. Sheehan does not know how she entered the pool during her second dive. (Sheehan Dep. at 61).

**Response:** **Disagreed.** She testified that she did not push with her legs (pg. 71) and that she did not have control over her second dive. (pg. 70). And that she was intending to do the same shallow dive as her first dive (page 60). But she lost her balance and slipped (pg. 35).

31. Ms. Sheehan could only recall looking at her feet on the coping and then entering the water. (Sheehan Dep. at 69).

**Response:** **Disagreed.** She testified that she remember seeing her feet on the deck, then losing her balance, then being in the water (Sheehan pg. 69).

32. Mr. Nadiger watched both of Ms. Sheehan's dives into the pool and observed that she dove into the pool at a steeper angle during her second dive. (Nadiger Dep. at 41-43).

**Response:** Agreed that Ms. Nadiger testified this way. Disagree to characterization that second entry was a dive as apposed to an uncontrolled head first entry.

33. As a result of her head striking the bottom of the pool, Mr. Sheehan suffered severe injuries to her spine which rendered her a quadriplegic. (See Report of Defendants' expert, Leon Kazarian, and the Report of Plaintiff's expert, Jamie Williams, attached hereto as **Exhibit K**).

**Response:** Agreed

34. The expert reports of the biomechanical engineers hired by plaintiff and defendants, respectively, both indicate that the symmetrical nature of the fractures to Ms. Sheehan's spine was caused by the axial loading of forces on her cervical spine caused by the top of her head striking the bottom of the pool. (**Exhibit K**).

**Response:** Agreed

35. At the time of the accident, the subject pool had three warnings on it. (See copies of pictures of pool from Plaintiff's Responses to NAMCO's First Request for Production of Documents attached hereto as **Exhibit L**).

**Response:** Agreed

36. One warning was attached to the top ledge of the pool adjacent to the ladder and stated:

DANGER NO DIVING SHALLOW WATER DIVING MAY CAUSE DEATH OR PERMANENT INJURY.

The warning also included a pictogram of a figure of a person with its head striking the bottom of the pool. See **Exhibit L**.)

**Response:** Agreed

37. Two other warnings were on both sides of the pool on the inside edges above water level and stated:

DANGER: NO DIVING-SHALLOW WATER See Exhibit L.)

**Response:** Agreed

38. Ms. Sheehan did not read any of the danger warnings against diving before she dove into the pool. (Sheehan Dep. at 19-20; 73-75).

**Response:** Agreed

39. Ms. Sheehan stated that even if she had read the warnings about the danger of diving into the shallow water on the inner edge of the pool, she would have done anyway. (Sheehan Dep. at 66-67).

**Response:** **Disagreed.** The warning on the inner edge of the pool were deficient in that they did not adequately convey the consequences of the diving into the pool. (See deposition of plaintiff's acquatic expert, Tom Ebro at 53-56. The question Ms. Sheehan responded to was whether she would have dove into the pool if she had seen the inner pool warning that said Danger-No Diving-Shallow water.

40. Before August 8, 2002, Ms. Sheehan had experience swimming and diving in pools. She swam in above-ground pools through her childhood. (Sheehan Dep. at 14-20).

**Response:** Agreed

41. The above-ground pools she had been in before August 8, 2002 were similar in size and in dept to the pool. In her left experience, she may very well have stood up and dove from the perimeter of an above-ground pool before August 8, 2002. (Sheehan Dep. at 14-20).

**Response:** Agreed

42. Several months before August 8, 2002, Ms. Sheehan had performed dives from the side of an in-ground pool in her apartment complex in North Carolina. While performing these dives, she dove into the middle of the pool where the water was about four feet deep. (Sheehan Dep. at 52-53, 78)

**Response:** Agreed

43. On August 8, 2002, both times when Ms. Sheehan dove into the pool, she knew the water was shallow. (Sheehan Dep. at 56).

**Response:** Agreed

44. Both before and at the time she dove into the pool, Ms. Sheehan was aware that diving into shallow water could be dangerous because she cold hit her head on the bottom of the pool. (Sheehan Dep. at 54).

**Response:** **Disagreed.** As to the magnitude of the risk. Jennifer Sheehan thought the danger of diving into the pool was that she could get scraped on the bottom. (Sheehan Dep. at 54).

JENNIFER SHEEHAN

by her attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio, Esq. (#3459)
The Owen Building
101 Dyer Street, Second Floor
Providence, Rhode Island 02903
(401) 831-5400
(401) 833-7979 (FAX)

and

/s/ Barry C. Reed, Jr., Esq.
Barry C. Reed, Jr., Esq.*
(Mass. BBO #542281)
Reed & Giordano
101 Tremont Street
Boston, MA 02108
(617) 426-1166
*Admitted Pro Hac Vice*

**CERTIFICATION**

To:

Mark P. Dolan, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903

Mary Cavanagh Dunn, Atty.
BLISH & CAVANAGH
Commerce Center
30 Exchange Terrace
Providence, RI 02903

I hereby certify that on the 13th day of August, I caused a true copy of the Opposition of Jennifer Sheehan to the Defendants' Motion for Summary Judgment with Memorandum of Law in Support to be sent CM/ECF to the above-listed attorneys and by conventional mail to:

John W. Kershaw, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903

/s/ David E. Maglio, Esq.

h:\clients\sheehan\pleadings\oppose delair statement of disputed facts