UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JENNIFER SHEEHAN<br>Plaintiff, | ) | |
| VS. | ) | C.A. NO. 05-364S |
| THE NORTH AMERICAN MARKETING CORPORATION and DELAIR GROUP, L.L.C.,<br>Defendants. | ) | |

**PLAINTIFF'S JENNIFER SHEEHAN'S OPPOSITION TO DEFENDANTS' DELAIR GROUP L.L.C.'S AND NORTH AMERICAN MARKETING CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff, Jennifer Sheehan, and states that the Defendants' motion for summary judgment should be denied on the basis that genuine issues of material facts exist over the issue of whether Jennifer Sheehan voluntarily assumed the risk of injury. As will be more fully stated in the plaintiff's opposition memorandum filed contemporaneously with this opposition, the plaintiff did not comprehend nor appreciate the magnitude of the risk of attempting a shallow dive into the above ground pool. Rhode Island case law clearly indicates that a plaintiff's subjective failure to understand and appreciate the magnitude of her undertaking precludes a finding that the plaintiff voluntarily assumed the risk of injury.

In addition, the defendants' argument that there is no evidence with respect to a product defect and/or causation should likewise fail since the plaintiff's aquatic experts have clearly set forth their opinions that the narrow 6 inch coping deck where the plaintiff

lost her balance and slipped off of was defective and that this defect was the cause of her sustaining her quadriplegia.

JENNIFER SHEEHAN

by her attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio, Esq. (#3459)
The Owen Building
101 Dyer Street, Second Floor
Providence, Rhode Island 02903
(401) 831-5400
(401) 833-7979 (FAX)

and
/s/ Barry C. Reed, Jr., Esq.
Barry C. Reed, Jr., Esq.*
(Mass. BBO #542281)
Reed & Giordano
101 Tremont Street
Boston, MA 02108
(617) 426-1166
*Admitted Pro Hac Vice*

Dated: August 13, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JENNIFER SHEEHAN<br>Plaintiff, | ) | |
| VS. | ) | C.A. NO. 05-364S |
| THE NORTH AMERICAN MARKETING CORPORATION and DELAIR GROUP, L.L.C.,<br>Defendants. | ) | |

**PLAINTIFF'S JENNIFER SHEEHAN'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The defendants argue that Jennifer Sheehan's conduct whereby she made a head-first entry into an above-ground pool which resulted in a quadriplegic injury was a voluntary assumption of the risk and therefore as a matter of law, the plaintiff's claim should be dismissed.

The plaintiff states that a legitimate question of fact exists over this issue in that Jennifer Sheehan did not fully appreciate the magnitude of the risk of diving into the shallow pool nor did she have the prerequisite knowledge of the precise risk which is required under Rhode Island case law.

In addition, the defendants argument that the plaintiff has not provided evidence of the defective nature of the subject pool and how the defect was the proximate cause of the plaintiff's injuries, should similarly be denied since the plaintiff's aquatic experts have indicated in their collective opinion that allowing pool users to gain access to a narrow, unstable six inch coping deck is unreasonably dangerous in that a pool user could

easily slip or lose one's balance and thus, lose control over the manner in which the individual chooses to enter the water; which happened to Jennifer Sheehan in this case.

## FACTUAL BACKGROUND

The plaintiff agrees with the majority of the undisputed facts which have been proffered by the defendants and thus will not duplicate same here. However there are a few omitted facts not mentioned by the defendants which have significant bearing on this motion.

The first is that when Jennifer Sheehan successfully executed her first shallow dive, the only risk of injury she appreciated was that she thought she would scrape her face (see plaintiff's list of undisputed facts, deposition of Jennifer Sheehan, Exhibit A, pg. 54).

Second, following the accident Jennifer Sheehan was taken to the Rhode Island Hospital. At the hospital her blood alcohol concentration level was measured as 189 MG/DL. The defendant's expert toxicologist has opined that this measurement correlates to a blood alcohol level of 0.16%. (Report of Dennis Hillliard, Exhibit B).

Third, the defendants have long known, and in fact have disseminated material which indicates that alcohol consumption can impair one's judgment and "affects the part of the brain which exercises restraint and control….leading people to try things they normally would not do such as ….. diving in above ground pools". (Booklet entitled, "The Sensible Way to Enjoy Your Above-ground/On ground Swimming Pool", Exhibit C.)

Fourth, the expert report and the deposition transcript of aquatic expert Thomas Ebro, as well as the expert reports of the plaintiff's engineer and biomechanical engineer

sets forth the basis of the plaintiff's claim that the narrow unstable 6 inch coping deck was defective and that this defect was the proximate cause of the plaintiff's injury. (See CV, report and deposition excerpts of Aquatic Expert, Thomas Ebro at Exhibits D and E. See also CV and report of Larry Raffaelli, plaintiff's expert engineer and Jamie Williams, plaintiff's biomechanical engineer. Exhibits F & G.)

**SUMMARY JUDGMENT STANDARD**

The Supreme Court of Rhode Island has frequently stated that summary judgment is a drastic remedy that should be cautiously applied. McPhillips vs. Zayre Corp 582 A2d 747, 749 (1990).

When evaluating a summary judgment motion the critical question is whether a genuine issue of material fact exists Crawford v. Cooper /T. Smith Stevedoring Co., Inc. 14 F. Supp 2d 202, 208 (D.R. I. 1998). The court must view the record in the light most favorable to the nonmovant and give that party the benefit of all reasonable inferences in its favor. Clifford V. Barnhard 449 F. 3d 276, 280 (1st Circuit, 2006).

At the summary judgment stage, there is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood. Crawford, supra at 208.

## ARGUMENT

A. PLAINTIFF DID NOT VOLUNTARILY ASSUME THE RISK OF INJURY WHEN SHE MADE A HEAD FIRST ENTRY INTO POOL BECAUSE SHE DID NOT UNDERSTAND AND APPRECIATE THE MAGNITUDE OF THE RISK.

The assumption of the risk doctrine is an affirmative defense which applies if the defendants can show that Jennifer Sheehan knew of the existence of a danger, appreciated its unreasonable character and then voluntarily exposed herself to it. Drew v. Wall 495 A 2d 229, 231 (R.I. 1985) The standard is a **subjective** one and should be distinguished from the objective reasonable man standard when assessing the plaintiff's contributory negligence. Kennedy v. Providence Hockey Club, Inc. 376 A 2d 329, 332 (R.I. 1977) (emphasis added).

The lynchpin of assumption of the risk is whether the plaintiff actually knew about the risk involved and appreciated its magnitude. Iadevaia v. Aetna Bridge Company 389 A 2d 1246, 1250 (R.I. 1978).

To determine whether the plaintiff knew about the risk and appreciated its magnitude Rhode Island courts look at the specific injury to determine whether the plaintiff voluntarily exposed herself to that risk. See Iadevaia, id at 1250 (" The specific risk in this case is the risk of a serious back injury…to hold that Anthony (plaintiff) assumed the risk of a **serious back injury** the record would have to indicate that defendant produced evidence which demonstrated that Anthony…. had agreed to take a chance and risk such an injury and that there was no evidence to rebut this suggestion." Iadevaia, id at 1250) See also Drew v. Wall, supra, 495A 2d at 232 ("Defendant Wall has presented evidence that establishes that decedent did in fact appreciate **the danger of**

**asphyxiation** from operating an internal combustion motor in an enclosed area.") (Emphasis added).

Given the standard as enunciated in Iadevaia and Drew, the question over whether Jennifer Sheehan voluntarily assumed the risk would require a factual determination over whether Jennifer Sheehan knew and appreciated that diving into waist-deep water could subject her to the serious risk of sustaining a quadriplegic injury.

With respect to the plaintiff's appreciation of the magnitude of this risk the plaintiff was asked by the defendants' at her deposition what she thought was the danger of diving into the subject pool. She replied that she thought she could get scraped on the bottom. (Exhibit A, Plaintiff dep., Pg. 54). At no time did Jennifer Sheehan indicate that she was aware of the specific risk of becoming a quadriplegic if she dove into the pool.

In addition, she testified that she never heard of any one being injured while diving into a pool (Exhibit A, pg 54). She also testified that minutes before her injury she had successfully executed a shallow dive at the precise spot where she subsequently injured herself. This fact would tend to support her mindset that she could perform such a dive without injuring herself.

She also testified to her intention at the time of her injurious head first entry. She intended to perform the same shallow dive but she did not get that far because she lost her balance and slipped. (Exhibit A, pgs. 35-36). She also testified she fell in (Exhibit A, pg 36.).

It is submitted that these facts, looked upon in a light most favorable to the plaintiff, would tend to show that at the time of the plaintiff's injury she did not appreciate that her conduct could cause a quadriplegic injury.

In addition, the fact that the plaintiff was under the effects of alcohol at the time would be a factor that a fact finder could consider when determining whether she understood and appreciated the risk of her activity. As stated in the defendants own literature, alcohol can instill a false courage or “bravado”, leading people to try things they normally would not, such as diving in an above-ground pools. (Exhibit C)

Finally, contrary to the defendants’ assertion that there are no Rhode Island pool cases, a Rhode Island Court has decided this issue. In Almonte v. Lakeside Swimming Pool 1994 WL 931008 (R.I. Sup. Ct. 1994) the Rhode Island Superior Court denied the defendant pool company’s motion for summary judgment ruling that a genuine issue of fact existed over whether the 23 year old plaintiff assumed the risk of injury when he dove into the shallow end of the defendant’s swimming pool. The court reasoned that even though the plaintiff testified that he knew he was diving into shallow waist deep water and that he was familiar with the pool prior to the accident, there existed a genuine issue of fact as to whether the plaintiff actually knew about the risk involved in diving into waist-deep water and appreciated the magnitude of sustaining a **quadriplegic** injury (emphasis added), (Text opinion at Exhibit H).

Given Jennifer Sheehan’s testimony that she felt that the only danger presented to her was that she could get scraped on the bottom, and that she had never heard of anyone getting hurt from diving into shallow water, this would present, at minimum, a genuine issue of fact as to whether Jennifer Sheehan voluntarily assumed the risk of diving into the subject pool.

The defendants' position is that the plaintiff intentionally dove into the pool on her second entry. There is no direct evidence to support this contention. The plaintiff has testified to the contrary.

Surely, the defendants have the right to argue at trial that the plaintiff's testimony should not be believed and that her second entry was an intentional dive. But such an argument goes to the weight and credibility of the witness and thus must be determined by the trier of fact. The defendants intentional dive argument merely underscores that there are legitimate questions of facts in this case.

B. DEFENDANT'S ASSUMPTION OF RISK POOL CASES ARE DISTINGUISHABLE

The defendants' memorandum cites two out of state pool cases that they suggest stands for the proposition that as a matter of law any person who dives into a shallow pool assumes the risk of injury. Both of these cases can be distinguished from the case at bar.

The first, Mullen-Hall v. Buranich, 2003, WL 1742 (N.Y. Sup. Ct. 2003) where the motion judge granted the homeowner's motion for summary judgment for injuries sustained by an 11 year old girl who repeatedly performed several **deep** dives into a shallow above-ground pool. (Text opinion at Exhibit I)

This case is distinguishable on several grounds. First, the plaintiff and a friend were diving off of a pool deck. Initially they performed very shallow dives, intentionally avoiding the bottom. However, as they continued to dive they intentionally began diving deeper and deeper into the pool. In fact, the plaintiff actually struck the bottom of the pool on more than one occasion. It was after this repeated intentional deep diving action that the plaintiff injured herself.

In contrast, Jennifer Sheehan never intended to dive in a manner in which she would hit the bottom. It was not her volitional act of diving to strike the bottom that caused her injuries, but rather it was the inherent defect of the narrow and unstable platform in which she was standing which caused her to slip and lose her balance which tossed her into the pool at a steeper angle than she anticipated.

Second, in Mullen-Hall, the N.Y. trial court was applying the assumption of risk standard as it pertained to owners and operators of recreational venues. Under N.Y. case law a person injured while participating in a sport or recreational activity cannot sue the owner or operator for risks inherent in the sporting or recreational activity because they are deemed assumed by the participant. However, the NY statute will impose liability if one can show that a dangerous condition over and above the usual dangers that are inherent in the sport caused the injury. In Mullen there were no allegations that the pool had a specific defect which rendered it unreasonably dangerous. In the present case, it is the contention of the plaintiff that her injuries were caused by a specific defect i.e, the narrow unstable coping.

Third, the pool deck where the Mullen plaintiff dove was significantly wider and sturdier than the coping platform in which Jennifer Sheehan was standing. A distinguishing inference can be made that had Jennifer Sheehan been standing on a wider, sturdier surface, that she would not have lost her balance nor slipped and thereby would have been able to maintain control over her body in order to perform a shallow dive.

The other pool case cited by the defendants is Sharpnack v. Hoffinger Industries, Inc. 223 Ga. App. 833, 479 S.E. 2d 435. In that case the Georgia appellate court upheld the defendant manufacturer’s motion for summary judgment whereby a minor plaintiff

was injured when he did a flip off of a mini trampoline into an above-ground swimming pool.

This case is distinguishable on the basis that the only theory of liability presented in Sharpnack was that there were no warning signs cautioning the plaintiff against diving into the shallow water. The court reasoned that warnings would not have prevented the accident because the plaintiff's own actions caused his injuries. The court determined that the plaintiff "suffered his tragic injuries as a result of doing a flip off a mini-trampoline into an above-ground pool in which he had swam before. No additional warnings or actions by the pool manufacturer would have prevented his injuries". The current case is different in that the manufacturer's inaction of not placing a cap over the coping caused the injury.

Finally the object which propelled the Sharpnack plaintiff into the pool was a mini-trampoline. This devise was not a part of the pool, nor was there any evidence that the manufacturer supplied the trampoline to the pool owner.

C. DEFECTIVE NATURE OF POOL WAS THE PROXIMATE CAUSE OF PLAINTIFF'S INJURY

The plaintiff has presented evidence that the narrow unsteady coping deck was a design defect which rendered the pool unreasonably dangerous. The defendants were furnished with two reports from two eminently qualified aquatic experts, who have opined that the 6 inch coping was defective due to its narrow width and instability. (See 4/12/07 report and CV of Larry Raffaelli, P.E., at Exhibit F. See also 4/23/07 report and CV of Thomas Ebro at Exhibit D).

In addition, the plaintiff's engineering expert, Raffaelli, has developed a rounded cap which can be placed over the coping which would function as a barrier to prevent

pool users from standing on the narrow coping. Had the defendants incorporated such a design modification to the subject pool, the accident that has inalterably changed Ms. Sheehan's life would have been avoided since she would have been unable to stand on the coping.

In addition, the plaintiff's aquatic specialist, Thomas Ebro, has been deposed by the defendants and has set forth his opinion on the defective nature of the coping deck as well as how the defect proximately caused Jennifer Sheehan's injury [1] (See Deposition Excerpts of Thomas Ebro at Exhibit E ).

The plaintiff has also retained a biomechanical engineer, one Jamie Williams, PhD who will testify on the manner in which the plaintiff entered the pool at the time of injury. In her report she indicates that Ms. Sheehan injuries were caused because of her losing her balance or becoming unstable in some way causing her to enter the pool at a steeper angle than she did the first time (Exhibit G).

Clearly, viewing the plaintiff's evidence in the most favorable light, a legitimate issue of fact is presented on whether the pool's coping was defective and whether it was the proximate cause of the plaintiff's injuries.

## CONCLUSION

In August 2002, the plaintiff's life was changed forever. The trier of fact may undoubtedly determine that Ms. Sheehan bears some responsibility for her injuries. However, the defendants should not escape an assessment of their responsibility since a

1 Plaintiff's engineering expert Lawrence Raffaelli, P.F. has not been deposed as yet because he is recovering from a health issue. The defendants chose not to take the deportation of biomechanical engineer Jamie Williams.

legitimate question of fact exists over whether Jennifer Sheehan made a knowing and voluntary assumption of the risk.

Further, the plaintiff has presented genuine questions of material facts with regards to negligence, defect and proximate cause such that the defendants' motion should be denied.

JENNIFER SHEEHAN

by her attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio, Esq. (#3459)
The Owen Building
101 Dyer Street, Second Floor
Providence, Rhode Island 02903
(401) 831-5400
(401) 833-7979 (FAX)

and
/s/ Barry C. Reed, Jr., Esq.
Barry C. Reed, Jr., Esq.*
(Mass. BBO #542281)
Reed & Giordano
101 Tremont Street
Boston, MA 02108
(617) 426-1166
*Admitted Pro Hac Vice*

## CERTIFICATION

To:

Mark P. Dolan, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903

Mary Cavanagh Dunn, Atty.
BLISH & CAVANAGH
Commerce Center
30 Exchange Terrace
Providence, RI 02903

I hereby certify that on the 13th day of August, I caused a true copy of the Opposition of Jennifer Sheehan to the Defendants' Motion for Summary Judgment with Memorandum of Law in Support to be sent CM/ECF to the above-listed attorneys and by conventional mail to:

John W. Kershaw, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903

/s/ David E. Maglio, Esq.

h:clients\sheehan\namco\pleadings\sheehan opp msj with memlaw