UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **JENNIFER SHEEHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-364 S** |
| | ) | |
| **THE NORTH AMERICAN MARKETING CORPORATION and DELAIR GROUP, L.L.C.** | ) | |
| | ) | |
| **Defendants** | ) | |

# DEFENDANTS DELAIR GROUP L.L.C.'S AND NORTH AMERICAN MARKETING CORPORATION'S REPLY MEMORANDUM OF LAW

Defendants Delair Group L.L.C. ("Delair") and the North American Marketing Corporation ("NAMCO") hereby submit the within Reply Memorandum of Law to Plaintiff Jennifer Sheehan's ("Plaintiff" or "Ms. Sheehan") Opposition to Delair and NAMCO's Motion for Summary Judgment.

## Introduction

Plaintiff's opposition brief addresses only two of the numerous grounds that support Defendants' motion for summary judgment. First, Plaintiff contends that she did not assume the risk of diving into shallow water as a matter of law because she did not assume the risk of the specific particular injury she suffered. However, because it is undisputed that she was fully aware she could suffer bodily harm from diving into shallow water, this argument fails.

Secondly, her contention that a jury question exists because of her testimony and her experts' opinions about how her injury was proximately caused by the coping fails because the

record is completely devoid of any non-speculative evidence about how her injury was caused by the coping rather than by her knowing and voluntary attempt to dive (for a second time) into a pool of water that was only 3 ½ feet deep.

**Factual Background**

Defendants submit the following responses to Plaintiff's Statement of Undisputed Facts:

1. Jennifer Sheehan's subjective understanding of the risk of diving into the subject pool was that she thought she could get scraped up on the bottom. (Dep. Excerpts of Jennifer Sheehan, pg. 54 Exhibit A)

   Response: Disputed. The "subjective understanding of the risk of diving into the subject pool" is a legal conclusion and not a statement of fact. Moreover, Ms. Sheehan's testimony that she thought she could get scraped up on the bottom while diving into shallow water is just one of many aspects of her subjective knowledge that she testified about in her deposition. *See e.g.* Defendants' Statement of Undisputed Facts and Exhibit C thereto)

2. Jennifer Sheehan had never heard of anybody getting hurt from diving into shallow water. (Exhibit A, pg 54).

   Response: Admitted.

3. Jennifer Sheehan's blood alcohol level taken at Rhode Island Hospital shortly after the accident was 189 MG/DL which correlates to a blood alcohol level of 0.16%. (Report of Dennis Hilliard, Exhibit B).

   Response: Disputed. Hilliard's report does not conclude that Miss Sheehan's blood alcohol level was 0.16%, but rather concludes that "Ms. Sheehan's BAC at 7:00 PM is calculated to have been between 0.169% and 0.178%, based on the Hospital result and a metabolism rate of between 0.01% to 0.02%."

4. Defendant Delair distributes a publication known as "The Sensible Way to Enjoy Your Aboveground Onground Swimming Pool" with each pool it sells. (Booklet at Exhibit C).

Response: Admitted.

5. Plaintiff Aquatics expert Thomas Ebro is of the opinion that the 6 inch coping deck was defective and that the defect was the proximate cause of Jennifer Sheehan's injuries. (CV and report of Thomas Ebro at Exhibit D), (Pertinent deposition excerpts at Exhibit E).

Response: Admitted. In addition, Ebro also testified that he reached his conclusory opinion before reading Ms. Sheehan's testimony about how the accident occurred, or viewing any documents other than medical records and a picture of the pool. *See* Deposition Transcript of Thomas Ebro, pertinent pages of which are attached hereto as **Exhibit 1** at pp. 38-48; 98-108; 128-130)[1].

6. Plaintiff engineering expert, Larry Raffaelli, has produced a report indicating that the subject pool's coping was defective and that is was the proximate cause of plaintiff's injuries. (CV and report of Larry Rafaelli, P.E. at Exhibit F).

Response: Disputed. Rafaelli's report does not indicate that the coping is defective, but rather states "it is my opinion that the above ground pool in which Miss Sheehan was swimming was defective."

7. Plaintiff biomechanical engineer, Jamie Williams, is of the opinion that the plaintiff injured herself because at the time of her second dive she lost her balance or in someway became unstable resulting in her entering the pool at a steeper angle. (CV and Report of Jamie Williams, PhD at Exhibit G).

---

[1] Exhibit 1 is the only new exhibit attached to this Reply Brief. The other record cites referenced in the brief are attachments to previously filed summary judgment documents.

Response: Disputed. Williams' report states, "While preparing to perform the same dive a second time she testifies to loosing her balance of in some way becoming unstable resulting in her entering the water at a steeper angle than she did the first time." The report also states, "The diving injury occurred 8 August 2002 when Jennifer Sheehan dove into the above ground pool owned by Marvin Nadiger and sustained a C5 burst fracture resulting in paralysis."

## Argument

A. Plaintiff Need Not Assume The Risk of Her Exact Injury To Assume The Risk As A Matter of Law.

The only reasonable conclusion to be reached from the undisputed facts that Plaintiff was injured while attempting to dive into 3 ½ feet of water is that she knowingly assumed the risk of injury from contacting the bottom of the pool. Plaintiff admits that she knew that diving into shallow water could possibly expose her to the risk of bodily harm from contacting the bottom. She also testified that even if she had read one of the warnings on the pool that prohibited diving, she would have dove into the pool anyway.

In *Kennedy v. Providence Hockey Club, Inc.*, the Rhode Island Supreme Court clearly explained the doctrine of assumption of the risk:

> As we have defined assumption of the risk, the concern is with *knowingly* encountering the danger. This is to be contrasted with *negligently* encountering a risk and falling victim, at one time in our legal history, to the defense of contributory negligence. It seems to us that one who "sees, knows, understands and appreciates" what he is doing, *D'Andrea v. Sears, Roebuck & Co.*, 109 R.I. 479, 287 A.2d 629 (R.I. 1972) is worlds apart from one who unwittingly and unsuspectingly falls prey to another's negligence. In the former instance the *plaintiff can be*

> *said to have consented to the possibility of harm* (emphasis added), whereas in the latter situation he has failed to assess accurately his situation and the ramifications of his own action. 119 R.I. 70, 76, 376 A2d 329, 333 (1977).
>
> In addition, courts in other jurisdictions have noted:
>
> It is not necessary to application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which injury results. However, while knowledge of the risk plays a role in determining the extent of the threshold duty of care, inherency is the sine qua non.

*Rivera v. Glen Oaks Village Owners, Inc.*, 839 N.Y.S.2d 183, 188 (N.Y. App. Div. 2007)(internal citations omitted). *See also Joseph v. New York Racing Ass'n., Inc.*, 809 N.Y.S.2d 526, 528 (N.Y. App.Div. 2007) *Snilsberg v. Lake Washington Club*, 614 N.W. 2d 738, 746 (Minn. Ct. App. 2000).

In *Kennedy,* the court noted that assumption of the risk is applied "to those situations where the claimant had actual knowledge of the hazard". 119 R.I. at 75, 376 A.2d at 332. In that case, the hazard was the "flying-puck syndrome" at hockey games. 119 R.I. at 77, 376 A.2d at 333. The plaintiff had attended numerous games and knew that the puck would fly out of the rink into the crowd. The plaintiff suffered a cut over her left eye, substantial medical expenses, and was out of work for a number of months. 119 R.I. at 73-74, 376 A.2d at 331.

Importantly, the focus for purposes of the assumption of the risk analysis should be on the risk or the hazard. Just as in *Kennedy*, the risk was possible injury from flying pucks, the risk the plaintiff voluntarily accepted in the instant case was possible bodily injury from diving into shallow water. The exact type and extent of bodily injury is not the subject of the analysis.

The determination of assumption of the risk as a matter of law in *Kennedy* did not turn on the specific injury incurred, but rather on the intentional and voluntary exposure to the known risk of possible harm from flying pucks. The possible injuries from flying pucks could range from a bruise or scrape to a laceration to a brain injury or even death. The possible injuries from diving into 3½ feet of water could range from a bruise or scrape to a laceration to a fracture to paralysis or even death. The orbit of possible injuries is not part of the analysis.

Here, Plaintiff seeks to twist the focus to whether she had awareness of the specific type of injury she might suffer by engaging in the inherently risky activity of diving into shallow water. Such an approach makes no sense at all in this case. As explained in Defendants' summary judgment brief and *infra*, courts, including the Rhode Island Supreme Court, have held that the danger of diving into shallow water is open, obvious and of common knowledge to an adult.

Once a person intentionally and voluntarily encounters a known risk, the person consents to take his chances of harm from the particular risk. Plaintiff did exactly that in deciding to dive from the rim of the pool into shallow water. She accepted the risk. Indeed, she would have tried to dive even if she had seen one of the signs warning against the obvious danger of such activity. (Sheehan Dep. at 66-67)[2]. Her subjective knowledge and state of venturousness are not debatable on this record. She fully comprehended and encountered the risk. She exhibited awareness and appreciation of the risk in her first dive – a shallow one. She admits she dove in this manner on purpose

---

2 All citations to Plaintiff's deposition testimony are in Exhibit C to Defendants' Statement of Undisputed Facts, previously filed with the Court.

to avoid the shallow bottom. To now argue that she did not assume the risk because she only thought she could scrape herself on the bottom is unreasonable and unacceptable in the face of the record in this case.

If someone elects to play with fire and is seriously burned, it is implausible to accept as an excuse for encountering that dangerous risk that the person was not aware she could be burned severely but only thought she could be singed. The known risk of harm from such an inherently dangerous activity is an obvious danger.

Certain risks are such that all adults are deemed to be aware of them. As stated by the authors of RESTATEMENT (SECOND) OF TORTS, § 496D cmt.d (1965):

> In cases of assumption of risk, . . . the plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive. There are some risks as to which no adult will be believed if he says that he did not know or understand them.

Moreover, "there are certain risks which anyone of adult age must be taken to appreciate: the danger of slipping on ice, of falling through unguarded openings, of lifting heavy objects . . . and doubtless many others." *W. Page Keeton et al., Prosser and Keeton on Torts §68 at 488 (5th ed. 1984).* In the case at bar, the hazard was diving into shallow water. The Plaintiff was aware that to do so was dangerous. In fact, the danger of diving into shallow water is an open and obvious danger, and is one of common knowledge. *Bucki v. Hawkins*, 914 A.2d 491, 496 (R.I. 2007); *Banks v. Bowen's Landing Corp*., 522 A.2d 1222, 1225 (R.I. 1987).

The Superior Court decision cited by Plaintiff in support of her argument that she did not assume the risk of her injury because she did not appreciate its magnitude is distinguishable in several ways. In that case, the court found that a 23 year-old plaintiff

did not assume the risk of the quadriplegic injury he suffered while diving from a stack of chairs into an in-ground pool. See *Almonte v. Lakeside Swimming Pool*, 1994 WL 931008 at *2. Notably, unlike Ms. Sheehan, the plaintiff in *Almonte* did not testify that he knew he could be injured by striking the bottom of the pool, or that he dove into the pool on a previous occasion. *Id.* The plaintiff in *Almonte* also testified that he rarely swam in pools, unlike Miss Sheehan who testified she had swum and dove in a variety of pools throughout her life, even as recently as a few months before her injury. *Id.* Moreover, the pool in *Almonte* had no warning signs, unlike the pool in the instant case which had three warning signs, one of which warned of the risk of permanent injury from diving. In fact, the plaintiff in *Almonte* testified he would not have dove in had he seen the warning signs, while Ms. Sheehan testified that even if she had read a warning that prohibited diving she would have dove in anyway.

In addition to those distinguishing circumstances, the core problem with the *Almonte* decision is that it misapplied § 496D of the Restatement (Second) of Torts in that the court relied on Comment e to § 496D for the proposition that whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude may only be determined by a court where reasonable men could not differ as to the conclusion. Significantly, however, the court ignored Comment d of the same section, 496D, which states:

> In cases of assumption of risk, however, the plaintiff's own testimony as to what he knew, understood, or appreciated is not necessarily conclusive. *There are some risks as to which no adult will be believed if he says that he did not know or understand them.* Thus an adult who knowingly comes into contact with a fire will not be believed if he says that he was unaware of the risk that he night be burned by it; and the same is true of such risks as those of drowning in water or falling from a height, in the

> absence of any special circumstances which may conceal or appear to minimize the danger. One who has spent a substantial time upon particular premises ordinarily would be found in fact to understand and appreciate the normal, ordinary risks of those premises, such as the danger from moving trains in a railroad switching yard. (emphasis added).

Thirteen years after the unappealed *Almonte* decision, the Rhode Island Supreme Court found that diving into shallow water is an obvious risk and dangerous activity which a reasonable adult should know and understand. *See Bucki*, 914 A.2d 491, 496 (R.I. 2007). In *Bucki*, the court affirmed a directed verdict for defendant landowner on plaintiff's failure to warn claim where plaintiff dove headfirst off a dock into a lake without determining its depth, finding that:

> The danger of diving into shallow water was open and obvious to a twenty-four-year-old man, regardless of whether a sign was erected alerting him to the danger. Therefore, as a matter of law, plaintiff must be held to have had knowledge and appreciation of this risk. Ultimately, it was plaintiff's own behavior that caused his injuries. *Id.*

Notably, Plaintiff does not address this principle in her opposition, nor does she deal with the cases cited by Defendants from other jurisdictions which hold that diving into shallow water is an open and obvious danger.

In the instant case, it is undisputed that Plaintiff knew how shallow the water was in the pool. Through her testimony, it is admitted that she knew the depth of the water in the pool. She knew it was shallow. (Sheehan Dep. at 55-56). She knew where the bottom was. She dove shallowly the first time on purpose to try to avoid the bottom. (Sheehan Dep. at 77). She was not looking for depth. She was not aiming down because there was not anywhere to go down. (Sheehan Dep. at 45;76). She knew that to dive into shallow water could be dangerous. She knew to do so could result in contacting the bottom. (Sheehan Dep. at 54).

She knowingly assumed the dangerous risk of hitting the bottom by freely boosting herself up on the rim of the pool and intentionally diving into water that was only 3½ feet deep. The first time she dove she was able to avoid the risk of contacting the bottom because she was able to dive shallowly. The second time she was in the process of encountering the risk of diving into shallow water but as she freely prepared to confront the risk she lost her balance, and dove in a manner that caused her to strike the top of her head on the bottom of the pool.

The Plaintiff exercised her free will in encountering the risk of injuring herself by knowingly diving into shallow water.

These undisputed facts allow only one reasonable conclusion – by conducting herself in this manner under these circumstances, the Plaintiff assumed the risk of injury as a matter of law.

B. Plaintiff's Strict Liability Claim Fails As A Matter Of Law Because She Has Failed to Present Any Evidence On Essential Elements Of The Claim.

It is undisputed that plaintiff was injured while she was attempting to dive into shallow water. In addition, it is undisputed that her quadriplegic injury was caused when the top of her head struck the bottom of the pool.

As discussed more fully in Defendants' summary judgment brief at p.16-18, one of the five essential elements that must be proven by Plaintiff is that the alleged product defect proximately caused her injury. The five required elements are (1) a defect in the design or construction of the product; (2) that the defect existed at the time the product left the hands of the defendant; (3) that the defect rendered the product unreasonably

dangerous, (meaning that there was a strong likelihood of injury to a user who was unaware of the danger of utilizing the product in a normal manner); (4) that the product was being used in a way in which it was intended to be used at the time of the accident; and (5) that the defect was the proximate cause of the accident and the plaintiff's injuries. *See Jodoin v. Toyota Motor Corp,* 284 F.3d 272, 276 (1st Cir. 2002).

This fifth and final element -- proximate cause - - is the only one addressed by Plaintiff in her opposition brief. It is conceded that she was not using the pool in the way in which it was intended or in a normal manner when she dove off of the coping into the shallow pool. She and her experts also do not dispute that the narrow coping was not designed or intended for standing or diving, or that she would have disregarded at least one of the three warnings on the pool that prohibited diving. *See* Plaintiff's Responses to Defendants Statement of Undisputed Facts at No. 20, 26, 35-39. As a result, it is clear that the Plaintiff has failed as a matter of law to proffer evidence of these essential elements of her strict liability claim.

1. <u>Plaintiff Has Failed To Present Any Non-Speculative Evidence About How The Coping Proximately Caused Her Injury.</u>

In any event, Plaintiff has also failed to meet her burden on the proximate cause element of both her product claim and her negligence claim because she has not and cannot present facts about the coping from which a jury could do anything more than speculate about the proximate cause of her injury. *See Thomas v. Amway Corp.*, 488 A.2d 716, 722, (R.I. 1985). In *Thomas*, the court found the plaintiff had not met her burden of proof on her negligence and strict liability claims when all she had shown was that the use of the product resulted in injury, without demonstrating the necessary

proximate relationship between a defect in the product and the injury. *Id.*

In a later case, the First Circuit reached a similar result when it affirmed a directed verdict finding that the plaintiff's voluntary placement of his hand into the spinning blade of a mower proximately caused his injury, not any defect in the blade itself. *See Kuras v. International Harvester Co.*, 820 F.2d 15, 18 (1st Cir. 1987). *See also Olshansky v. Rehrig Int'l*, 872 A.2d 282, 288 (R.I. 2005) (affirming summary judgment for defendant shopping cart manufacturer on plaintiff's product liability and negligence claims where plaintiff could not show how the alleged defect -- the basket separating from the wheels -- was caused by the manufacturer's negligence).

As discussed in Delair and NAMCO's summary judgment brief, Plaintiff has testified that she does not know how she entered the pool the second time. She testified that while she was attempting to dive into the pool the second time, she lost her balance and dove into the pool at a steeper angle than the first time and her head struck the bottom. (Sheehan Dep. at 34-35, Exhibit J). She does not know what caused her to lose her balance or how she slipped on the coping during her second dive. (Sheehan Dep. at 35, 57, 61). She does not know where her arms and feet were positioned before and during her second dive, or how she entered the pool during her second dive. (Sheehan Dep. at 57, 61). All she could recall was looking at her feet on the coping, losing her balance and then being in the water. (Sheehan Dep. at 69). Her next memory is staring at the bottom of the pool after having hit her head on the bottom. (Sheehan Dep. at 61).

Thus, the role of the coping in her injury is unknown and unknowable. A reasonable inference could be made that if she had not been attempting to dive but had merely slipped while standing on the narrow coping, she would not have struck her head

on the bottom. Thus, looking at the facts in the light most favorable to Ms. Sheehan, the only reasonable inference is that <u>but for</u> her intentional attempt to dive, her injury would not have occurred. Like the plaintiff in *Kuras*, who misused the lawnmower, it was Ms. Sheehan's voluntary attempt to dive from the coping, a clearly prohibited activity, and a misuse of the product, that proximately caused her injury, not any alleged defect in the coping itself. The Plaintiff's arguments, theories, and assumptions that the coping somehow "tossed" or "propelled" her into the pool so that she landed on the top of her head are unreasonable, unsupported, and purely speculative and impermissible inferences from the facts in the record. *See e.g. Waldman v. Shipyard Marina, Inc.*, 102 R.I. 366, 371; 230 A.2d 841, 844 (1967)(explaining that in Rhode Island a reasonable inference must be drawn from an established fact and cannot be based on an inference drawn from another inference). *See also Campbell v. Muswim Pools, Inc.*, 537 N.Y.S.2d 412, 412 (N.Y. App. Div. 1989)(finding the plaintiff decedent's conduct was the sole proximate cause of his injury when he dove "either impulsively or deliberately" into the 4-foot above-ground swimming pool). In the case at bar, Ms. Sheehan would not have struck her head on the bottom of the pool if she had not been trying to dive in, an open and obviously dangerous activity that was ill-advised and prohibited by the warnings on the pool.

2. <u>Plaintiff's Experts Opinions Are Based on Speculation And Do Not Create An Issue of Fact As to Whether the Coping Proximately Caused Her Injury.</u>

Plaintiff's experts' opinions about the suitability of the coping for standing and diving are in no way probative evidence of the key issue of whether the coping proximately caused the injury to Ms. Sheehan. In fact, Thomas Ebro, the expert Plaintiff

relies on for her "evidence" that the coping proximately caused her injury, testified at his deposition that he developed his opinion before he had even read Ms. Sheehan's testimony. *See* Exhibit 1 at pp. 38-48; 98-108; 128-130. He also testified that after having read her deposition, he saw that Miss Sheehan did not know how she entered the pool, and he admitted that in reviewing her account of her injury and giving his "opinion" he had to "fill in the blanks." Exhibit 1 at pp. 98, 103. The experts' conclusory theories about the coping and its relationship to how she may have entered the pool are completely devoid of record support. Defendants strain to follow Mr. Ebro's line of thinking as he offers his theories, but his deposition testimony at pages 98-104 (See Exhibit 1) amply demonstrates that his "opinion" is in essence a process of "filling in the blanks", "hindcasting", theorizing, envisioning, assuming, and "filling in the dots." His "opinion" is a classic example of speculation and conjecture, calling for impermissible leaping inferences to conclude that a "defect" in the pool proximately caused the plaintiff's injury. Thus, since the Plaintiff has failed to meet her burden to put forth non-speculative evidence on which a jury could reasonably find that the coping proximately caused her injury, summary judgment should enter for the Defendants.

Finally, because Plaintiff's opposition brief does not oppose or address Defendants' arguments in support of summary judgment of Plaintiff's claims for breach of express warranty, breach of implied warranty, and failure to warn as a basis for strict liability, summary judgment should enter for Defendants on those claims as well.

## Conclusion

For the reasons set forth herein, as well as those in the Delair and NAMCO's Summary Judgment Motion, Delair and NAMCO respectfully request that summary judgment be entered in their favor against all claims of the Plaintiff.

DELAIR GROUP LLC
By its Attorneys,

/s/ Joseph V. Cavanagh, Jr.
Joseph V. Cavanagh, Jr. #1139
Mary Cavanagh Dunn #6712
BLISH & CAVANAGH, LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
jvc@blishcavlaw.com
mcd@blishcavlaw.com

NORTH AMERICAN MARKETING CORPORATION
By its Attorneys,

/s/ Mark P. Dolan
Mark P. Dolan #3280
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
Telephone: 401-272-8800
Facsimile: 401-421-7218
ricedolan@ricedolan.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 4th day of September, 2007 I caused a true copy of the within *Reply Memorandum* to be electronically filed via ECF, or regular mail as indicated to the following counsel of record:

Mark P. Dolan, Esq.
RICE, DOLAN & KERSHAW
170 Westminster Street, Suite 900
Providence, RI 02903
ricedolan@ricedolan.com
(Via ECF)

David E. Maglio
David E. Maglio & Associates, P.C.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903
dmaglio@magliolaw.com
(Via ECF)

Barry C. Reed, Esq.
Reed & Giordano, P.A.
101 Tremont Street
Boston, MA 02108
(Via Regular Mail)

/s/ Mary C. Dunn