UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JENNIFER SHEEHAN<br>Plaintiff,<br><br>v.<br><br>THE NORTH AMERICAN MARKETING CORPORATION AND DELAIR GROUP, L.L.C.<br>Defendants. | ) | C.A. No. 05-364 S |

OPINION AND ORDER

William E. Smith, United States District Judge.

After a dive into an above-ground pool tragically rendered Jennifer Sheehan ("Sheehan") a quadriplegic, she sued the pool's manufacturer and distributer claiming that they (1) negligently created an unreasonably dangerous and defective pool; (2) breached express warranties and the implied warranty of merchantability; and (3) are strictly liable for their allegedly defective product. The pool's manufacturer, Delair Group, L.L.C. and its distributor, North American Marketing Corporation (collectively "Defendants") now move for summary judgment on all counts arguing that Sheehan assumed the risk of injury because she voluntarily dove into a pool she knew to be shallow. Additionally, Defendants proffer that Sheehan failed to plead facts sufficient to establish that their acts or omissions caused her injuries. After careful consideration, and for the reasons set forth below, this Court will grant summary judgment on all counts.

I. Factual Background

The unfortunate and tragic facts of this case are largely undisputed. On August 8, 2002, 32 year old Sheehan and her then-boyfriend enjoyed an early afternoon consuming alcohol in and around various establishments in Warwick, Rhode Island. Later that day, the pair arrived at the boyfriend's home to swim in his backyard pool with his three young children. The boyfriend owned an above-ground Johnny Weismuller Safari model pool manufactured by Delair, a New Jersey corporation, and distributed by NAMCO, a Connecticut corporation.[1]

Sheehan climbed the ladder to enter the pool and began playing and splashing with the children. In doing so, she failed to read three written warnings, one adjacent to the pool ladder stating "DANGER: NO DIVING/SHALLOW WATER DIVING MAY CAUSE DEATH OR PERMANENT INJURY" and two others along the pool's inside edge reading "DANGER: NO DIVING - SHALLOW WATER."[2] One warning depicted a swimmer striking his or her head on the pool's floor.

After swimming for approximately one half-hour, Sheehan pulled herself up to a sitting position on the "coping" of the pool. The coping, a piece of extruded aluminum that sits on top of the walls

---

[1] Delair manufactured the pool wall and frame sometime between 1994 and 1998. It did not, however, manufacture or distribute the pool's ladder, liner, filter unit, or skimmer.

[2] Sheehan testified at her deposition that even if she had read the sign along the inside edge of the pool, she would have dived anyway.

of that model pool, connects the various pieces of the pool together and prevents damage to the wall's top surface.[3] As she lifted herself from the sitting position, Sheehan noticed the pool's coping was not sturdy. Nevertheless, she successfully executed a "shallow dive" aimed across the pool's surface rather than a deeper vertical dive because of the pool's shallow 3.5 foot depth. Soon after, Sheehan attempted a second dive.

On her second try, she again pulled herself onto the coping and stood for a moment. As she attempted to dive, however, she lost her balance and entered the pool at a much steeper angle than before. Sheehan struck the top of her head on the pool floor. The resulting spinal injuries rendered her a quadriplegic. She subsequently sued both Defendants alleging a design defect in the coping and for breach of express warranties and the implied warranty of merchantability.

II. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The role of summary judgement is to look behind the facade erected by the pleadings and assay the parties' proof in

[3] The model owned by Sheehan's boyfriend had at least 6 inches of coping.

order to determine whether a trial will serve any useful purpose." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). This Court must view all the facts in the light most favorable to the non-moving party, and draw from those facts all of the reasonable inferences that favor the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

Here, where Defendants seek summary judgment against a party bearing the burden of proof, they have the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of [the record] which [they] believe[] demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants prevail on this front, the burden shifts to Sheehan to "demonstrate that a trialworthy issue exists." Mulvihill, 335 F.3d at 19. However, Sheehan cannot meet her burden by merely alleging that a fact is in dispute. DeNovellis, 124 F.3d at 306. Rather, she must show that sufficient evidence exists for a jury to find for her on each essential element of her claim. Id. In other words, Sheehan must provide evidence that is both "genuine" - "such that a reasonable factfinder could resolve the point in favor of the nonmoving party" - and "material" - "the fact is one that might affect the outcome of the suit under the applicable law." Mulvihill, 335 F.3d at 19. Importantly, in an action such as this, summary judgment is not necessarily precluded

where the plaintiff's claims involve "elusive concepts such as motive or intent" if the plaintiff opposes the motion with only "conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Stratus Computer, Inc., 40 F.3d 11, 13 (1st Cir. 1994) (internal citations and quotation marks omitted).

III. Analysis

Counts I and II of Sheehan's Complaint charge that Defendants negligently designed, manufactured, and sold the pool. In Counts VI and VIII, she alleges that Defendants are strictly liable for a defectively designed pool. Sheehan argues, through the deposition testimony of two experts, that the coping's narrow width and instability constituted a defective design that proximately caused her injuries. Even though Defendants did not intend for the coping to be stood upon, much less used as a diving platform, she contends that Defendants could foresee that swimmers would do so anyway.

The Rhode Island Supreme Court imposed a significant burden on plaintiffs in products liability litigation when it adopted the elements of strict liability set forth in the Restatement (Second) of Torts § 402A (1965). See Ritter v. Narragansett Elec. Co., 283 A.2d 255, 261-262 (R.I. 1971). A plaintiff must show the existence of each of the following five elements to hold a manufacturer liable for a defectively designed product: (1) a defect in the design or construction of the product; (2) the defect existed at the time the product left the hands of the defendant; (3) the

defect rendered the product unreasonably dangerous, meaning that a strong likelihood existed of injury to a user who was unaware of the danger of utilizing the product in a normal manner; (4) the plaintiff used the product in a way in which the manufacturer intended at the time of the accident; and (5) the defect proximately caused the accident and the plaintiff's injuries. See e.g., Jodoin v. Toyota Motor Corp., 284 F.3d 272, 276 (1st Cir. 2002) (citing Raimbeault v. Takeuchi Mfg. (U.S.) Ltd., 772 A.2d 1056, 1063 (R.I. 2001)).

Even if a plaintiff establishes the foregoing elements, her conduct may absolve a product liability defendant of liability if she assumes a risk of harm. See e.g., Turcotte v. Ford Motor Co., 494 F.2d 173, 183 (1st Cir. 1974) ("the defense of assumption of risk remains viable in products liability cases"); Mignone v. Fieldcrest Mills, 556 A.2d 35, 41 (R.I. 1989) ("In Rhode Island the defense of assumption of risk remains viable in products-liability cases."); Swajian v. Gen. Motors Corp., 559 A.2d 1041, 1044 (R.I. 1989) (alluding to "the availability of assumption of risk in products liability actions") (citing Fiske v. MacGregor, Div. of Brunswick, 464 A.2d 719, 729 (R.I. 1983)). This reasoning likewise extends to claims of strict liability against a product manufacturer. See Mignone, 556 A.2d at 41 ("Strict liability is not absolute liability, and certain conduct on the part of a

plaintiff may serve as a complete or partial bar to recovery in an action predicated on strict liability.").

A plaintiff assumes the risk of harm where she "knowingly accepts a dangerous situation." Kennedy v. Providence Hockey Club, Inc., 376 A.2d 329, 333 (R.I. 1977). In doing so, "he [or she] essentially absolves the defendant of creating the risk or, put another way, the duty the defendant owes the plaintiff is terminated." Id. Assumption of the risk applies even if the defendant created an unreasonable risk. See Raimbeault, 772 A.2d at 1064. Plaintiffs who "know of the existence of [a] risk and appreciate its unreasonable character" yet voluntarily expose themselves to that risk, may not recover for their injuries. Id. Importantly for Sheehan's negligence claims, assumption of risk equally bars negligence liability. Drew v. Wall, 495 A.2d 229, 231 (R.I. 1985).

To determine whether a plaintiff assumed the risk of her conduct, for purposes of both negligence and strict liability, a court must subjectively examine what the plaintiff understood and appreciated at the time of the alleged incident. See D'Allesandro v. Tarro, 842 A.2d 1063, 1067 (R.I. 2004). This subjective standard focuses solely on the plaintiff's observations and understandings at the time of injury. Id. The plaintiff must know of the risk and understand its magnitude. Iadevaia v. Aetna Bridge Co., 389 A.2d 1246, 1250 (R.I. 1978). Typically, whether a

plaintiff assumed a risk is a question for the trier of fact. Drew, 495 A.2d at 231. However, "[i]f the facts suggest only one reasonable inference, however, the issue becomes a question of law and consequently may be decided by the trial justice." Id.; D'Allesandro, 842 A.2d at 1067 ("if only one rational inference can be drawn from the evidence on this issue, then the trial justice may treat the question as one of law"). Here, the issue boils down to whether Sheehan understood the risk of diving into a shallow pool and appreciated the magnitude of that risk when she attempted her dive into the pool.

Sheehan argues it is a question of fact whether she assumed the risk of diving into the pool. She acknowledges the apparent danger of diving into shallow water. However, she contends that her awareness of that danger at the time of the accident was limited to the possibility that she "could get scraped up on the bottom." Sheehan had experience swimming and diving in above ground pools before, and claims she had never heard of anyone being injured by diving into a pool. Moreover, the success of her first dive further supported the mindset that she could successfully execute a shallow water dive and was not aware of the specific risk of spinal injury. Consequently, she posits that because she did not foresee the high possibility of severe spinal injury, she could not have voluntarily exposed herself to that risk.

Sheehan relies almost entirely on a Rhode Island Superior Court opinion that presents a similar factual scenario. In Almonte v. Lakeside Swimming Pool & Supply Co., C.A. No. 91-657, 1994 WL 931008 (R.I. Sup. Ct. Dec. 14, 1994), the 23 year old plaintiff denied that he appreciated the extent of danger presented by a shallow dive and would not have attempted the dive had he been warned. Id. at *1. In short, the Superior Court held a dispute of material fact remained as to whether the plaintiff appreciated the magnitude of sustaining a severe spinal injury. Id. at *2. Almonte is indeed a well-reasoned opinion by a most respected judge of the Superior Court; but, the Rhode Island Supreme Court diminished its persuasive value with its more recent discourse in yet another tragic diving accident case. In Bucki v. Hawkins, the Court held, as a matter of law, that a plaintiff diving into dark and unfamiliar waters "must be held to have knowledge and an appreciation" of the risk involved. Bucki, 914 A.2d 491, 497 (R.I. 2007). The Court also reasoned that "[t]he danger of diving into shallow water was open and obvious to a twenty-four-year-old man, regardless of whether a sign was erected alerting him to the danger." Id. at 496. Therefore, as a matter of law, "it was plaintiff's own behavior that caused his injuries." Id. Here, Sheehan's actions presented an even more apparent danger to her safety. Unlike the dark waters of Bucki, where the depth of the water was unknown, the pool in this case had three distinct and

obvious sings warning about the dangers of diving into the pool. Id. Moreover, Sheehan did not attempt a dive into dark and unfamiliar waters. She had been swimming in the above ground pool for about a half-hour during daylight hours, with full opportunity to appreciate its depth.

The facts of this case suggest only one reasonable inference: that Sheehan knowingly accepted and appreciated the danger of attempting a dive into a shallow pool. See D'Allesandro, 842 A.2d at 1067. Moreover, the Second Restatement confirms that some risks exist "as to which no adult will be believed if he says that he did not know or understand them." Restatement (Second) of Torts § 496D cmt. d (1965). Such is the case here.[4] Consequently, this Court must conclude that Sheehan's knowledge and appreciation of the danger associated with diving into the pool absolve Defendants from liability.

Sheehan attempts to distinguish Bucki because the Rhode Island Supreme Court analyzed that case under the failure to warn rubric rather as a products liability claim. The Court finds this

---

[4] Defendants that contend the Almonte decision conflicts with § 496D of the Restatement (Second) of Torts. See Almonte v. Lakeside Swimming Pool & Supply Co., C.A. No. 91-657, 1994 WL 931008 (R.I. Sup. Ct. Dec. 14, 1994). They argue that the Almonte court erred in holding that a person's assumption of risk of diving into shallow water depends on the magnitude of risk perceived. Based on the holding in Bucki, Defendants are right in their reasoning. Because Bucki concludes that one must be held, as a matter of law, to know and appreciate the dangers of diving into shallow water, the magnitude of risk perceived is irrelevant. Bucki v. Hawkins, 914 A.2d 491, 496 (R.I. 2007).

argument unpersuasive, particularly in light of the fact that, as already discussed herein, assumption of risk applies in products liability actions. See Turcotte, 494 F.2d at 183; Mignone, 556 A.2d at 41. Although Sheehan alleges Defendants are liable under various products liability theories, namely negligence, breach of warranty, and strict liability, for purposes of this motion, the key facts underlying her claims are the same as those underlying a failure to warn case. It is undisputed in this case that Sheehan was executing dives off the coping into a shallow pool, and that she understood her behavior to be risky. Yet, she seeks here to assign blame to the Defendants under the theory that the pool's coping was defective, causing her to lose her footing, and sending her headfirst into the pool at a steep angle. What is key, however, is the undeniable fact that Sheehan was at that time engaging in the same activity that Bucki discusses. She was attempting a dive into shallow water, an act as to which she was assumed to have knowledge and an appreciation of the risks involved. Bucki, 914 A.2d at 496. Furthermore, under the facts of this case, the existence of warnings only increases the likelihood that she knew and appreciated and voluntarily exposed herself to that risk. See Raimbeault, 772 A.2d at 1064.

It is immaterial whether the alleged negligence at issue is the failure to warn or the defective nature of the pool. Just as it might be reasonably foreseeable that a person might dive off a

pier that lacks adequate warnings, as in Bucki, it is reasonably foreseeable that a person might pull herself into a standing position on the coping of a pool in order to use the coping as a diving platform. Despite such possibilities, ultimately, as Bucki aptly describes, the risk involved is not rooted in the warnings or the sturdiness of the coping. The ultimate risk involved is that which lurks at the bottom of the swimming pool, a risk that is open and obvious enough that Sheehan assumed it when she made the decision to attempt shallow dives off the pool's edge. See Raimbeault, 772 A.2d at 1064. In sum, Sheehan's knowing and voluntary actions absolve Defendants of any unreasonable risk they may have created and which may have contributed to her accident. Id. Consequently, as to Sheehan's claims that Defendants negligently created an unreasonably dangerous and defective pool, and should be held strictly liable for their negligence, summary judgment is granted and Counts I, II, VII and VIII of the Complaint are hereby dismissed.[5]

---

[5] The conclusion reached in this opinion, that assumption of the risk bars Sheehan's products liability and strict liability claims, is based on Rhode Island law. The Court notes, however, that courts in other jurisdictions, faced with similar factual scenarios, have reached the opposite conclusion. In Corbin v. Coleco Ind., Inc., 748 F.2d 411, 419 (7th Cir. 1984), the Seventh Circuit, applying Indiana law, refused to state as a matter of law that a reasonable consumer should know that a dive into shallow water poses the risk of serious injury. In doing so, the Court reversed a district court decision granting summary judgment to a pool manufacturer on a failure to warn claim. Id. The Court went on to analyze the claim brought against the defendant for an allegedly defective pool "lip," again reversing the district

Sheehan also claims that Defendants expressly warranted that the pool was free from defects and safe for ordinary purposes. According to the Rhode Island Supreme Court, "the plaintiff who claims breach of express warranty has the burden of proving that the statements or representations made by the seller induced her to purchase that product and that she relied upon such statements or representations." Thomas v. Amway Corp., 488 A.2d 716, 720 (R.I. 1985). Here, Sheehan has made no factual allegations that she relied on any express warranty from the manufacturer. On the contrary, the only express statements from the manufacturer applicable here were the three clear and unambiguous warnings against diving in the pool. Furthermore, Sheehan's opposition brief seems to concede that point in as much as it fails to provide any factual or legal support for her breach of express warranty claims. "Judges are not . . . mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly' . . . or else forever hold its peace." Rivera-Gomez v.

---

court's grant of summary judgment, and holding that the open and obvious rule did not defeat the plaintiff's strict liability theory. Id. at 420; see also Bunch v. Hoffinger Indus., Inc., 123 Cal. App. 4th 1278, 1304 (2004) (pool manufacturer had duty to warn about the consequences of diving into shallow pool, and noting that under California law, assumption of risk does not absolve manufacturer of liability associated with defective product); but see Griebler v. Doughboy Recreational, Inc., 466 N.W.2d 897, 903 (Wisc. 1991) (affirming summary judgment in favor of pool manufacturer on negligence and strict liability claims where plaintiff confronted an open and obvious danger of diving into water of unknown depth).

Castro, 843 F.2d 631, 635 (1st Cir. 1988) (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F2d 985, 990 (1st Cir. 1988)). Therefore, in a situation such as this, the Court will not "cast about blindly" for a basis upon which to deny Defendants' summary judgment motion as to such claims. See Hadaja, Inc. v. Evans, 263 F. Supp. 2d 346, 353 (D.R.I. 2003).

Sheehan claims, additionally, that Defendants are liable for her injuries because they impliedly warranted that the pool was of merchantable quality and fit for ordinary use. To recover under an implied warranty of merchantability claim, a plaintiff must establish that the defendants created a product unfit for its ordinary and intended purpose. Thomas, 488 A.2d at 719. Similar to a product liability claim, a plaintiff must also prove "the product is defective, that it was in a defective condition at the time it left the hands of the seller, and that said defect [was] the proximate cause of the injury." Lariviere v. Dayton Safety Ladder Co., 525 A.2d 892, 896 (R.I. 1987); see also Castrignano v. E.R. Squib & Sons, Inc., 546 A.2d 775, 783 (R.I. 1988) (discussing the potential mutual exclusivity of strict liability and breach of implied merchantability claims).

Despite not recalling exactly how she entered the pool, Sheehan claims, through her experts, that the defectively designed coping proximately caused her injury. Specifically, Sheehan's experts testified in their depositions that the pool's coping was

too narrow and too unstable for ordinary use. Even though the Defendants did not intend the coping as a platform, Sheehan's experts opine that it was foreseeable that pool users would stand on the coping and attempt to re-enter the pool from that surface. The experts contend that an alternative design - a curved or coned coping - would have been more effective at preventing misuse. This defect, they assert, proximately caused her injury.

"Inferences drawn from the evidence, however, may not rely upon mere conjecture or speculation to establish essential elements." Thomas, 488 A.2d at 722. In fact, one of Sheehan's experts admitted in his deposition testimony that her lack of memory left him "filling in the blanks" and "filling in the dots" of how she entered the pool. Her inability to remember how she entered the pool left each expert speculating as to what may have happened. In the end, their testimony amounted to nothing more than conjecture. Even assuming, arguendo, that Defendants defectively designed the coping, Sheehan cannot, as a matter of law, establish proximate causation.

More telling, Sheehan again fails to address Defendants' arguments regarding her breach of implied warranty claims. "[A] litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions."

D'Allesandro, 842 A.2d at 1065. For these reasons, the Court cannot find sufficient evidence exists for a jury to hold Defendants liable under a breach of implied warranty of merchantability claim. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Counts II, III, IV, and V of Sheehan's complaint.

**V. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to all counts.

IT IS SO ORDERED.

William E. Smith
United States District Judge
Date: 4/2/08